

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-12-1996

# Rogal v. American Broadcasting Co., Inc.

Precedential or Non-Precedential:

Docket 94-2060

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Rogal v. American Broadcasting Co., Inc." (1996). *1996 Decisions.* Paper 245.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/245

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 94-2060
_____

OWEN ROGAL, D.D.S.; OWEN ROGAL, D.D.S., P.C.

v.

AMERICAN BROADCASTING COMPANIES, INC.; JOHN STOSSEL

Owen Rogal, D.D.S.;
Owen Rogal, D.D.S., P.C.
Appellants
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
_____

(D.C. Civil No. 89-05235)

Argued September 15, 1995

Before: SLOVITER, Chief Judge, ALITO, Circuit Judge, and SEITZ,
Senior Circuit Judge

(Opinion Filed: January 12, 1996)
_____

Ronald H. Surkin, Esq. (Argued)
Nancy C. DeMis, Esq.
Richard, DiSanti, Gallagher,


Schoenfeld & Surkin
25 West Second Street
Media, PA  10963-0900

Attorneys for Appellants

Jerome J. Shestack, Esq. (Argued)
Wolf, Block, Schorr and Solis-Cohen
Twelfth Floor Packard Building
15th and Chestnut Streets
Philadelphia, PA  19102

1

Burt M. Rublin, Esq.
Ballard Spahr Andrews & Ingersoll

1735 Market Street, 51st Floor
Philadelphia, PA  19103

Attorneys for Appellees

_____

OPINION OF THE COURT
_____


ALITO, Circuit Judge:

The appellants in this case, Owen Rogal, D.D.S. and his professional corporation (collectively, "Dr. Rogal"), appeal from an order of the district court imposing sanctions pursuant to its inherent power in the amount of $256,360.  This amount represents the defendants' attorneys' fees for trial and trial preparation and one-half of the fees incurred in preparing their motion for sanctions.  Because we conclude that the district court erred in declining to hold an evidentiary hearing in connection with the motion for sanctions, we reverse the district court's order and remand the matter to allow the district court to hold an evidentiary hearing.


I.

Dr. Rogal is a Philadelphia dentist specializing in the treatment of temporomandibular joint disorder (more commonly known as "TMJ"), and specifically in the diagnosis and treatment of "mandibular whiplash," i.e., TMJ caused by automobile accidents.  In 1989, Dr. Rogal was the subject of a critical story that was presented on defendant American Broadcasting Companies' ("ABC") news magazine program "20/20" and reported by

3

defendant John Stossel.  In brief, the story highlighted the aggressive advertising materials disseminated by Dr. Rogal to personal injury lawyers, the controversial nature of his concept of "mandibular whiplash," and other dentists' doubts about his diagnoses of the condition.  The story suggested that Dr. Rogal's practice may have been motivated principally by a desire to extract money from insurance companies.

Dr. Rogal subsequently sued ABC and Mr. Stossel for defamation and false light invasion of privacy in Illinois state court.  The case was removed to the United States District Court for the Northern District of Illinois, which transferred the case to the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1404 in July 1989.  In December 1992, after a trial in which the defendants rested after the plaintiffs' case, the jury returned a verdict in favor of the defendants.

After the jury had been excused, the district court directed counsel for ABC to "review the record and document your contentions with respect to your motion for sanctions," adding: "I would like to look them over myself."  App. 1387.  ABC submitted a motion seeking sanctions against Dr. Rogal and his lead trial attorney, M. Mark Mendel, pursuant to the court's inherent power.  The motion alleged that Dr. Rogal had repeatedly given false testimony at trial and that Mr. Mendel had disobeyed court orders regarding post-verdict contact with jurors by investigators and had committed numerous violations of ethical

4

and legal standards concerning closing arguments.[1] Dr. Rogal's attorneys filed a lengthy brief in opposition to the motion, App. 1458-1605, as well as a reply memorandum. App. 1667-73. The district court granted ABC's motion, noting that, under Chambers v. NASCO, Inc., 501 U.S. 32 (1991), it had "the inherent power to impose sanctions upon parties and their attorneys where they engage in bad faith conduct which abuses the judicial process," App. 1676. The court detailed ten separate subject areas in which it found that Dr. Rogal had testified falsely. App. 1679-89. In each of these areas, the court concluded that Dr. Rogal's testimony was directly contradicted by his own words or advertisements or by the testimony of his own witnesses. Id.

A sampling of the district court's findings will serve to illustrate the breadth of Dr. Rogal's alleged misrepresentations. One subject area cited by the district court concerned Dr. Rogal's use of the notation "D•" on patient examination forms. The district court noted that Dr. Rogal had initially testified that this notation meant that the patient's symptoms were "decreased." The next day, however, after being shown out-takes of the examination of a patient on whose form Dr. Rogal had written "D•" but who said in the out-takes that most of her symptoms were absent, Dr. Rogal stated that he had used "D•" to denote "absent." He made this statement even though the

_____

[1] The district court eventually sanctioned Mr. Mendel by ordering him to pay the defendants $13,573, an amount that represented one-half of the fees that they incurred in preparing their motion for sanctions, and also directed the Clerk to forward the court's sanctions opinion to the Disciplinary Board of the Supreme Court of Pennsylvania. App. 1938. Mr. Mendel did not file an appeal.

5

examination form stated that "A = Absent" and even though, when a reimbursement form was submitted to an insurer for a patient with "D•" notations on his or her examination form, the reimbursement forms stated that the symptoms were "decreased." This practice, the court found, enabled Dr. Rogal to continue administering (and billing for) numerous additional treatments and increased the settlement value of the patient's personal injury lawsuit by allowing the patient to claim (falsely) that the injury was permanent. App. 1679-81.

In several other subject areas, the district court found that Dr. Rogal had contradicted his own answers to interrogatories and to requests for admissions, as well as his own deposition testimony, when he testified at trial. The subjects of this testimony included Dr. Rogal's income, a dispute between Dr. Rogal and state licensing authorities, Dr. Rogal's examination of Mr. Stossel, and his reasons for agreeing to be interviewed by 20/20. App. 1682-85.

The district court also noted contradictions regarding the way in which Dr. Rogal held himself out to the public. According to the district court, Dr. Rogal denied ever advertising himself as Dr. Owen Rogal without adding that he was a dentist rather than a physician. However, his own promotional materials and advertisements frequently omitted any reference to "D.D.S." and his instructions to office personnel regarding telephone calls from prospective patients urged them to refer to him as a "doctor" and a "physician." App. 1688.

6

After the court scheduled a hearing to determine the nature of the sanction to be imposed, Dr. Rogal retained new counsel. Dr. Rogal's new lawyers filed motions seeking a vacatur of the sanctions order, an evidentiary hearing, and a continuance of the hearing. The court continued the disposition of the motion until it had received new briefing from Dr. Rogal's new lawyers, App. 1723-29, but decided that an evidentiary hearing was not necessary for due process purposes, since the sanctionable conduct had taken place in court. App. 1727-28. Dr. Rogal's new lawyers filed a lengthy brief, with numerous exhibits. App. 1730-1914.

After receiving these submissions and hearing argument, the court again rejected Dr. Rogal's request for an evidentiary hearing to explain his trial testimony. App. 1929. The court subsequently issued the order imposing sanctions against Dr. Rogal. The court restated its rationale for refusing to hold an evidentiary hearing, noting that "[t]he actionable conduct took place in the presence of the court and is documented by the record," and that "[d]uring the trial, plaintiffs had every opportunity to explain and attempt to justify the numerous inconsistencies and contradictions" in Dr. Rogal's testimony. District Court Order of September 27, 1994 at 1. Dr. Rogal's motion for reconsideration was denied, and he appealed.

## II.

We review a district court's determinations regarding the imposition of sanctions for abuse of discretion. Chambers v. NASCO, Inc., 501 U.S. at 55; Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 75 (3d Cir. 1994); cf. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 399-405 (1990) (Rule 11); Simmerman v. Corino, 27 F.3d 58, 62 (3d Cir. 1994) (factual determinations, legal conclusions, and choice of sanction under Rule 11 receive "substantial deference"). An abuse of discretion in this context would occur if the district court "based its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." Simmerman, 27 F.3d at 63 (quoting Cooter & Gell, 496 U.S. at 405); Westinghouse, 43 F.3d at 75.

On appeal, Dr. Rogal argues that the district court committed three separate reversible errors: declining to hold an evidentiary hearing to allow Dr. Rogal to explain the apparent contradictions in his testimony; failing to assure that Dr. Rogal was informed of the conflict of interest that allegedly arose between him and his attorney when ABC sought sanctions against both of them; and failing to make an explicit finding of bad faith on the part of Dr. Rogal. Dr. Rogal also argues that on remand the case should be reassigned to a different district court judge.

## III.

8

The imposition of monetary sanctions by a court implicates fundamental notions of due process and thus requires "fair notice and an opportunity for a hearing on the record." Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980); see also Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 540 (3d Cir. 1985); Eash v. Riggins Trucking Co., 757 F.2d 557, 570 (3d Cir. 1985) ("[A]s a general practice a monetary detriment should not be imposed by a court without prior notice and some occasion to respond."). Here, there is no dispute that Dr. Rogal had fair notice of the possibility of sanctions. The issue before us is whether the required "opportunity for a hearing on the record" should have included an evidentiary hearing at which Dr. Rogal would have had the opportunity to explain the apparent contradictions and inconsistencies in his testimony.

We have repeatedly emphasized that the requirements of due process are not reducible to a static formula, but rather are sensitive to the facts and circumstances of a given case. While "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner[,] the concept is flexible, calling for procedural protection as dictated by the particular circumstance." Kahn v. United States, 753 F.2d 1208, 1218 (3d Cir. 1985) (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). The determination of the appropriate form of procedural protection requires "an evaluation of all the circumstances and an accommodation of competing interests. The individual's right to fairness must be respected as must the

9

court's need to act quickly and decisively." Eash, 757 F.2d at 570 (citations omitted).

In Jones v. Pittsburgh Nat. Corp, 899 F.2d 1350 (3d Cir. 1990), where sanctions had been imposed under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927, we had occasion to address the requirements of due process in a context similar to that presented here. Eschewing "any rigid rule[, which] would, to say the least, be undesirable," we recognized that "[t]he circumstances must dictate what is required." Id. at 1358. We therefore announced a flexible rule under which

> a district court in the sound exercise of its discretion must identify and determine the legal basis for each sanction charge sought to be imposed, and whether its further resolution requires further proceedings, including the need for an evidentiary hearing.

Id. at 1359. Under the particular facts and circumstances of the case before us, we conclude that the imposition of sanctions against Dr. Rogal without holding an evidentiary hearing was not consistent with sound exercise of the district court's discretion.

Our holding is a narrow one and depends heavily on the specific nature of Dr. Rogal's alleged misrepresentations and the relationship of each instance of contradictory or inconsistent testimony to the central issues of the litigation. We recognize that in many instances in which sanctionable conduct occurs in the court's presence, no hearing is required. Cf. Kapco Mfg. Co. v. C & O Enterprises, Inc., 886 F.2d 1485, 1495 (7th Cir. 1989). However, the present appeal presents an instance in which,

10

despite the fact that the sanctionable conduct took place in court, "a hearing could [have] assist[ed] the court in its decision." Id. This is so because we do not entirely agree with the district court's conclusion that "[d]uring the trial, plaintiffs had every opportunity to explain and attempt to justify the numerous inconsistencies and contradictions" in Dr. Rogal's testimony. District Court Order of September 27, 1994 at 1.

Given the nature of the disputed testimony, we are persuaded by Dr. Rogal's contention that he did not have the same incentive at trial to try to clear up all of the apparent contradictions and inconsistencies in his testimony or to try to show his good faith as he would have had at an evidentiary hearing on the question of sanctions. At trial, Dr. Rogal was attempting to prove that the defendants had committed the torts of defamation and false light invasion of privacy. In order to prove these claims, it was not necessary for him to establish the truth of every one of the matters asserted in the portions of his testimony that the district court found to be false or misleading, and as a matter of trial strategy his attorneys might well have concluded that trying to clear up all of these points might have unduly diverted the jury's attention from Dr. Rogal's own claims. To be sure, Dr. Rogal's credibility was undoubtedly an important factor at trial, and we assume that his attorneys were concerned about seeming inconsistencies and contradictions that undermined his credibility. Nevertheless, the fact remains that their interest in clearing up apparent inconsistencies and

11

contradictions and in demonstrating their client's good faith was different in some potentially significant respects at the trial from what it would have been at an evidentiary hearing focused squarely on the question whether Dr. Rogal gave false or misleading testimony and acted in bad faith.

It may well be that at an evidentiary hearing Dr. Rogal's attorneys could not have done any better in attempting to rehabilitate him than they did at trial, but we conclude that the dictates of due process require that they be given that chance. At least on reconsideration, Dr. Rogal's attorneys expressly and strenuously sought a hearing and made a proffer of the evidence they would introduce. We recognize that the district court, in ruling on these requests, did not have the benefit of a precedent from our court specifically requiring a hearing under these circumstances, and in the absence of such a precedent we can understand why the court ruled as it did. We now hold, however, that under the circumstances of this case, an evidentiary hearing should be held to allay due process concerns. The evidence cited in the district court's opinion, unless rebutted, is sufficient to show that Dr. Rogal gave false or misleading testimony and proceeded in bad faith. Dr. Rogal should, however, be given the opportunity to rebut the inferences that the district court drew from this evidence. See Healy v. Chelsea Resources, Ltd., 947 F.2d 611, 617 (2d Cir. 1991).

In light of our conclusion that the current award of sanctions should be vacated and that the case should be remanded for an evidentiary hearing, we need not decide whether, as Dr.

12

Rogal argues, the district court was obligated to advise him of a potential conflict of interest with his former attorney, Mr. Mendel, before deciding whether sanctions should be imposed on either or both of them. On remand, Dr. Rogal will be represented by new counsel. We also need not decide whether, as Dr. Rogal asserts, the current award of sanctions is defective because the district court did not say in so many words that it found that Dr. Rogal acted in bad faith. We have no reason to assume that the court on remand will not make an express finding one way or the other on this question.

Several other arguments raised by Dr. Rogal should be addressed at this time, however, because they concern matters that may well arise on remand. None of these arguments, however, requires extended discussion. First, contrary to Dr. Rogal's suggestion, the district court, in order to sanction Dr. Rogal for "bad faith" conduct under Chambers based on his trial testimony, need not apply the standards that would be applicable at a criminal trial for perjury. See, e.g., United States v. Dunnigan, 507 U.S. 87 (1993); Bronston v. United States, 409 U.S. 352 (1973). Dr. Rogal cites no precedent holding that these standards must be applied in his context, and we are aware of none. Under Chambers, what is required is a determination that the party acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." 501 U.S. at 45-46.

Second, contrary to Dr. Rogal's argument, should the district court on remand again determine that Dr. Rogal's trial testimony was pervasively false or misleading and that he acted

13

in bad faith, an award of sanctions comparable in amount to the award now before us would not be excessive.  See Chambers, 501 U.S. at 56; Maddox v. E.F. Hutton Mortgage Corp., 723 F. Supp. 1246, 1249-50 (M.D. Tenn. 1989); Eppes v. Snowden, 656 F. Supp. 1267 (E.D. Ky. 1986).

Finally, we see no basis whatsoever for Dr. Rogal's argument that this case should be assigned on remand to a different district court judge.  Such reassignments are ordered only "infrequently and with the greatest reluctance," Nobel v. Morchesky, 697 F.2d 97, 103 n.11 (3d Cir. 1982), and we see no ground for doing so here.  Contrary to Dr. Rogal's assertions, the record contains no evidence that the district judge developed a "bias" against him.  We recognize that the district court drew certain conclusions regarding Dr. Rogal's testimony from the record evidence and that on remand the judge will be required to give fair reconsideration to those conclusions in light of the new evidence that Dr. Rogal wishes to present.  We have no doubt, however, that the judge can and will do so.  Nor is the amount of the sanction imposed on Dr. Rogal by itself a reason to question the district court's impartiality.  To the contrary, the district court was reacting to what it perceived as repeated and serious instances of false testimony on the part of Dr. Rogal.  We thus see no ground for ordering reassignment.

## VI.

For the foregoing reasons, we reverse the district court's order imposing sanctions against Dr. Rogal, and we remand the case for an evidentiary hearing.

14