**MEDICAL BILLING, INC., and Reich, Seidelmann & Janicki, Plaintiffs, Defendants to Counterclaim,**

v.

**MEDICAL MANAGEMENT SCIENCES, INC., Defendant and Counterclaimant,**

v.

**Dr. Norbert E. REICH, et al., Additional Defendants to Counterclaim.**

No. 1:94–CV–1567.

United States District Court,
N.D. Ohio,
Eastern Division.

July 22, 1996.

Louis C. Lustenberger, Jr., Christopher P. Johnson, Laurence A. Tosi, Donovan, Leisure, Newton & Irvine, New York City, for Medical Billing, Inc., Reich Seidelmann & Janicki, Norbert E. Reich, D.O. and Frank E. Seidelmann, D.O.

John E. Lynch, Jr., Daniel L. Brockett, Steven A. Friedman, Squire, Sanders & Dempsey, Cleveland, OH, for Medical Management Sciences, Inc., James F. Thacker, William J. Dezonia, Jr.

Daniel W. Hammer, Luke R. Dauchot, Lisa R. Battaglia, Thompson, Hine & Flory, Cleveland, OH, for Hahn Loeser and Parks.

## *MEMORANDUM & ORDER*

O'MALLEY, District Judge.

On April 26, 1996, this Court issued a Memorandum and Order ("Sanctions Order") granting in part plaintiff MBI's oral and written motions for sanctions against defendant MMS and its counsel, HLP.[1] In the Sanctions Order, the Court reserved ruling on MBI's motion to disqualify HLP until after oral argument on April 26, 1996. At oral argument, HLP maintained it should not be disqualified; on April 29, 1996, however, HLP filed a motion to withdraw as MMS's counsel and for a continuance of the trial date. The Court granted this motion, mooting the question of disqualification.

Shortly thereafter, HLP, through counsel newly retained to act on its behalf, filed a motion to alter or amend the Sanctions Order (docket no. 136). Also, HLP filed a motion to quash or modify a subpoena that had been served upon it by MBI (docket no. 137). For the reasons that follow, the motion to alter or amend the Sanctions Order is **DENIED.** Because the documents subpoenaed are available to MBI from the Court's

---

1. Plaintiffs Medical Billing, Inc. and Reid, Seidelman and Janicki are referred to herein as "MBI." Defendants Medical Management Sciences, Inc., James Thacker, and William DeZonia, Jr. are referred to as "MMS." MMS's counsel, Hahn Loeser & Parks, is referred to as "HLP."

file, the motion to quash or modify the subpoena is **GRANTED.**

### I. *Motion to Alter or Amend the Sanctions Order*

#### A. *Standing*

As an initial matter, MBI argues that HLP does not have standing to move the Court to alter or amend its Sanctions Order. HLP invokes Fed.R.Civ.P. 52, 59, and 60 as bases for its motion to alter or amend, and MBI argues these rules only allow "parties" to so move. Rule 59(e), however, appears to allow non-parties to move for alteration or amendment of judgments. Moreover, given the important and serious nature of the issues presented, the Court is disinclined to refuse review of HLP's motion based merely on lack of standing. Accordingly, the Court does not accept MBI's suggestion to deny HLP's motion for lack of standing.

#### B. *Procedural Due Process*

■ The primary basis for HLP's motion to alter or amend the Sanctions Order is that it did not receive "adequate notice of and a hearing upon [the] motion to sanction it." Motion at 2. HLP insists it did not receive the procedural due process to which it is entitled, because it received only "four hours notice" of the oral motion for sanctions and was never given an opportunity to "fully defend itself against the serious charges of misconduct, in the context of an evidentiary hearing." *Id.* at 3, 4. As recounted below, however, the process actually afforded HLP met or exceeded all it was due.

Late in the morning on Thursday, October 26, 1995—six days prior to the then-scheduled November 1, 1995 trial date—counsel for MBI contacted the Court and requested an emergency hearing for later that day. Counsel stated that he had recently obtained knowledge of extremely serious matters he believed required the Court's immediate attention, and was prepared to fly to Cleveland from New York at once if the Court could make time to hear him. The Court acceded

to this request, setting a hearing for that afternoon. The Court then informed HLP of this event. The hearing took place about four hours later.

Although the Court had little idea of what MBI desired to discuss at the hearing, HLP did. The previous day, MBI had discovered the "Maxwell letter," a May 15, 1995 letter from MMS general counsel Joanne Maxwell to M. Patrick Monaghan, MMS's outside accountant at C.W. Amos & Company. The Maxwell letter was written two weeks after MBI had requested from MMS, through formal discovery, its 1993 and 1994 financial statements. In the Maxwell letter, Ms. Maxwell referred to two footnotes in the 1994 financial statement "pertaining to the MBI lawsuit" and stated that "our lawyers, after reviewing the footnotes felt that some inaccuracies existed and suggested I, rather than they, do the rewrite." It is undisputed that the counsel Ms. Maxwell was referring to was HLP.

Until three weeks before MBI discovered this Maxwell letter, MMS had consistently refused to produce the 1993 and 1994 financial statements, claiming irrelevance.[2] On October 3, 1995, however, MMS belatedly produced these financial statements—apparently because its expert intended to rely upon them at the upcoming trial, scheduled to begin three weeks later. These financial statements contained footnotes directly addressing the non-competition and guaranteed revenue contract clauses at the heart of this litigation, and the critical issue of purchase price allocation.

After MMS produced the financial statements and before the October 26 hearing occurred, the following events took place in the order listed: (1) MBI asked MMS/HLP, via letter, for an explanation of why MMS had not produced the obviously relevant financial statements earlier (October 5); (2) MBI received what it perceived to be an inadequate response (October 5); (3) MBI filed a motion for discovery sanctions based on the failure to produce the financial statements, seeking to exclude any testimony by

---

2. This claim of irrelevance was put forward by HLP in discovery responses signed by HLP on May 31, 1995, and also via telephone during a discovery conference with the Court's law clerk on June 21, 1995.

MMS's expert (October 10); (4) MMS responded to this motion, asserting that the failure to produce the 1993 and 1994 financial statements had been "inadvertent" because neither MMS nor HLP had earlier appreciated that those documents addressed any question at issue in this case (October 16);[3] (5) the Court held a final pretrial at which HLP adhered to its assertion that the failure to produce the financial statements had been "inadvertent" (October 23); (6) MBI discovered the Maxwell letter (October 25); (7) MBI demanded the deposition of Maxwell (October 25); and (8) HLP wrote a letter to MBI and the Court denying any discovery abuses and requesting MBI itself "abide by a basic fundamental code of civility" and "adhere to the professional code of responsibility." In sum, it is fair to state that, although the October 26 hearing was expedited, its subject matter was no real surprise to HLP.

At the October 26 hearing, after showing the Court the Maxwell letter, MBI asked that MMS be sanctioned for knowingly failing to produce relevant documents and for altering relevant documents already subject to a discovery request. Specifically, MBI asked that the Court strike MMS's counterclaims. MBI also asked the Court to continue the trial date. HLP responded by offering explanations for the Maxwell letter and the timing of discovery productions, and also offered to produce its entire MMS correspondence file for *in camera* inspection.

The Court declined to rule immediately on MBI's oral motion for sanctions, stating it wanted to read the depositions of MMS's accountants, review HLP's correspondence file, and take more time to assess the facts. The Court did, however, continue the trial date and ordered MMS to produce all versions of the 1993 and 1994 financial statements, draft or otherwise. Following the October 26 hearing, HLP submitted for *in camera* inspection its correspondence file, as well as affidavits from MMS's accountant and from Ms. Maxwell. MBI submitted the relevant portions of the accountant's deposition testimony. On February 12, 1996, MBI also submitted a written motion for sanctions, together with over 1½ inches of exhibits in support (deposition transcripts, correspondence, discovery requests, and so on). The written motion reiterated the bases for sanctions MBI had first identified at the oral hearing, and added other bases as well. In response to the written motion for sanctions, MMS filed a 51–page brief in opposition, together with over ½ inch of exhibits in support. MMS also filed a surreply opposing the motions for sanctions. In addition, the Court received several rounds of correspondence from counsel for both parties regarding the sanctions issues. It was only after receiving and reviewing in detail all of these materials that the Court issued its Sanctions Order on April 26, 1996.

In light of this history, HLP's argument that it did not receive procedural due process is unpersuasive. Certainly, HLP had adequate notice of the motion for sanctions, if "adequacy" is measured by the opportunity to respond. Although the initial October 26 hearing was scheduled with short notice, the Court did not rule on the oral motion for sanctions until six months later, after HLP had submitted several lengthy briefs, letters, and even *ex parte* communications in response. The only mechanism this Court did not afford HLP was oral argument in addition to the October 26 argument, or an evidentiary hearing. Of course, there is ordinarily no requirement that such a hearing take place. *See* Local Rule 8:8.1(g) (Court may "rule on any opposed motion without hearing at any time after the time for filing a reply memorandum has elapsed").

The adequacy of the process afforded HLP and MMS is underlined by the fact that, before the Court ruled, neither HLP nor MMS ever requested oral argument or a hearing on the sanctions motions, even

---

3. Specifically, HLP, on MMS's behalf, stated:
   "At the time that MMS responded to plaintiffs' document requests, MMS believed that MMS's financial statements were irrelevant to the subject matter of this action, because it believed that the treatment of the $2.7 million purchase price for the billing relationship was addressed only in MMS's 1992 financial statements and tax returns."
   MMS's brief in opposition to sanctions, dated October 16, 1995, at 3–4.

though both were well aware that the Court had the matter under consideration.[4]

The cases cited by HLP for the proposition that they were denied procedural due process are all inapposite. In *Securities Indus. Ass'n v. Clarke*, 898 F.2d 318 (2d Cir.1990), the court cautioned that "a district court's failure to provide adequate notice and an opportunity to be heard would in itself provide the grounds for reversal of an order imposing sanctions." *Id.* at 322. In *Clarke*, however, the court imposed sanctions *sua sponte*, apparently without giving *any* notice to the client or its counsel. The Sixth Circuit cases cited by HLP do not support its position, either. In *Ray A. Scharer & Co., Inc. v. Plabell Rubber Prods., Inc.*, 858 F.2d 317 (6th Cir.1988), the Sixth Circuit noted that parties subjected to sanctions must be given "at least minimal procedural protections." *Id.* at 321. The *Plabell* court continued:

> We do not, in so holding for due process purposes, indicate that there must be a formal "complaint" lodged with specifications in the event of a proposed sanction, or that a "full fledged" hearing is mandated, but notice and a reasonable opportunity to be heard is a minimum protection to be afforded.

*Id. See also INVST Fin. Group, Inc. v. Chem–Nuclear Sys., Inc.*, 815 F.2d 391, 405 (6th Cir.1987), *cert. denied sub nom. Garratt v. INVST Fin. Group*, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987) (upholding award of sanctions against counsel "even though no formal hearing on sanctions was held"). It is fair to say that HLP's appearances before the Court on October 23 and October 26, followed by HLP's submission of over 60 pages of formal briefing over a several month time period, constitutes an opportunity to be heard. Simply, HLP received far more than "minimal procedural protections" in this case.

HLP insists that, in cases where counsel is accused of acting in bad faith and is sanctioned pursuant to the court's inherent powers, an evidentiary hearing is mandatory. HLP cites *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), *Rogal v. American Broadcasting Cos., Inc.*, 74 F.3d 40 (3d Cir.1996), and *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192 (7th Cir.1987), for the proposition that this Court must hold an evidentiary hearing before imposing sanctions. The Court is not persuaded, for several reasons. First, as noted in *Piper*, while an evidentiary hearing may be required when a Court imposes sanctions under its inherent powers alone, a hearing is not required for sanctions imposed, as here, under Fed.R.Civ.P. 26, 33, 34, and 37, and 28 U.S.C. § 1927.[5] *Piper*, 447 U.S. at 764, 767, 100 S.Ct. at 2463, 2464–65. For example, under 28 U.S.C. § 1927, an attorney or party "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." A finding of bad faith is not required. *Runfola & Associates, Inc., v. Spectrum Reporting II, Inc.*, 88 F.3d 368 (6th Cir.1996) (citing *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir.1986)). Similarly, when objections to discovery are asserted without substantial justification, Rule 26(g)(3) instructs that a Court "shall" impose sanctions upon counsel, the party, or both, without regard to issues of subjective bad faith. In this case, the sanctions imposed are for discovery abuses that clearly and needlessly multiplied the proceedings. HLP's intent is revealing, but ultimately a minor factor supporting the Court's rulings. Because a finding of bad faith was neither necessary for nor central to the Court's

---

4. HLP did argue that the Court must conduct an evidentiary hearing regarding whether HLP should be disqualified. Brief in Opposition at 48–50. The Court did hold such a hearing, but the question of disqualification was mooted by HLP's voluntary withdrawal as counsel for MMS. HLP never requested any hearing regarding the other sanctions requested by MBI, which included striking MMS's counterclaims and entering default judgment.

5. As noted in the Sanctions Order, the oral motion for sanctions was granted pursuant to Fed. R.Civ.P. 37(a)(4) and 26(g). Order at 7. The written motion for sanctions was granted pursuant to Fed.R.Civ.P. 26(g), 33(b)(3–4), 34(b) and 37, 28 U.S.C. § 1927, and the Court's inherent authority. Order at 13.

Sanctions Order, no evidentiary hearing was required.

■ Second, as noted in *Rogal*, due process requirements for the imposition of sanctions are flexible, and depend on the nature of the sanctions imposed. *Rogal*, 74 F.3d at 44; *see also Devaney v. Continental Am. Ins. Co.*, 989 F.2d 1154, 1159 (11th Cir.1993) ("[a]ssessment of costs and attorneys fees is ... one of the lesser sanctions contemplated by the Federal Rules and it presents a lesser due process concern than, for example, outright dismissal of the action"). Although MBI requested the sanction of striking MMS's counterclaims and granting of default judgment, the Court chose not to take these actions. Ultimately, the sanctions imposed in this case are not severe—the Court continues to view them as lenient, given the sanctions it could have imposed. Thus, HLP is not entitled to greater procedural due process protections than it received.

Finally, as noted in *Hill*, evidentiary hearings are required only if there are contested factual issues. *Hill*, 814 F.2d at 1202. HLP insists that there are contested factual issues—specifically, HLP insists the changes it suggested be made to the footnotes of MMS's 1994 financial statements were only syntactical and grammatical, and were made not to "final" versions but to "draft" versions.[6] Thus, HLP argues, it did not participate in altering a document that would have ultimately been available as evidence in this case.

Even if this were true, HLP has still admitted that it persisted in refusing to produce the documents, claiming irrelevance, after it: (1) received a discovery request for both draft and final versions of MMS's 1994 financial statements; and (2) had suggested "non-substantive" changes be made to language contained in those statements that specifically addressed this litigation. This claim of irrelevance had no factual, legal, or logical basis.[7] Indeed, HLP also admits it changed its excuse for non-production from "irrelevance" to "inadvertence" when it produced the documents just before trial, even though it and MMS knew as early as May, 1995 (contrary to the claims in MMS's October 16, 1995 brief) that the 1994 statements expressly addressed the $2.7 million purchase price in the transaction at issue. It is also now undisputed that MMS's failure to produce the 1994 financial statement earlier was not the result of a lost mailing made to counsel for MBI, as HLP claimed on October 26.

Separately, HLP does not deny it belatedly produced the "Myers audit documents" on the eve of trial, or that it told the Court on the record that those documents were produced immediately after MMS personnel scoured their offices in response to this court's admonitions at the October 23, 1995 pretrial conference when, in fact, MMS possessed these documents for a month or more before that pretrial was held. Finally, HLP does not dispute that MMS failed to produce the "DeZonia memo" (found only fortuitously in the file of a third party) with HLP's full knowledge.[8] These combined actions twice led unnecessarily to the continuance of the trial date in this action and needlessly extended and multiplied the amount and cost of discovery.

These *uncontested* facts alone—which are only some of the bones undergirding the

---

6. Although HLP argues strenuously in its reply brief, as it did on October 26, 1995, that the changes were made to "draft" documents, this contention seems inconsistent with the statement in counsel's recent affidavit, at ¶ 11, where counsel states that HLP was aware, at least as of October 25, 1995, that a "final" 1994 financial statement dated May 10, 1995 had been created.

7. The same individual from HLP who admittedly participated in making changes to these documents, which undisputedly addressed issues central to this case, signed a discovery response only days later declaring those documents to be irrelevant.

8. As noted in the Court's Sanctions Order, HLP told the Court, upon inquiry, that the DeZonia memo was withheld on privilege grounds. HLP admitted, however, that it never identified the DeZonia memo, so that the claim of privilege could be tested, and this Court has already concluded that the claim of privilege was objectively baseless. Certainly, the Court is qualified to make this determination without a hearing on the issue. *See, e.g., Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1201–02 (7th Cir.1987).

body of sanctionable conduct proved by clear and convincing evidence—support the sanctions imposed by this Court. An evidentiary hearing is not required in this case, because material facts easily sufficient to support the Court's decision are not in genuine dispute.

### C. Reasonable Attorney Fees

■ HLP also argues that the Court is allowed only to award "reasonable" attorney fees and expenses as sanctions, and must hold a hearing to determine the reasonableness of MBI's fees and expenses. The Court agrees that HLP and MMS are only liable for reasonable attorney fees and expenses. Fed.R.Civ.P. 26(g), 37(a)(4); 28 U.S.C. § 1927. The Court does not agree, however, that a hearing is required. The Court expected, and continues to expect, that counsel for MBI will compile a statement of the fees and costs allowed by the Court, and present this statement to the Court, HLP, and MMS. Thereafter, the Court expects HLP and MMS will object, if appropriate, to the reasonableness of the fees. After MBI responds to these objections, the Court will make a final determination regarding the exact amount of reasonable fees and expenses allowed as sanctions. The Court has no doubt that all parties involved are familiar with this procedure, which ordinarily does not warrant an evidentiary hearing.[9] Only after the Court makes this final "reasonableness" determination will HLP or MMS be required to pay the sanctions imposed.

### D. Newspaper Coverage

■ Because HLP's reply brief focuses almost exclusively upon the appearance of a newspaper report that publicized the Sanctions Order, the Court feels compelled to add a word about this matter. Ted Wendling, "Judge Rebukes Law Firm for Deceiving Court," *Cleveland Plain Dealer,* May 18, 1996, at 1B. While acknowledging the public nature of the Sanctions Order, HLP suggests that the fact the Sanctions Order was made the subject of a newspaper report somehow defines whether an additional hearing is war-

ranted. Indeed, the reply brief appears to imply that the Court has an obligation to undo any damage caused by the appearance of the article.

First, the Court did not publicize this matter in any way. Indeed, out of concern for the sensitive nature of these matters, the Court has been careful in its Orders to refer to "HLP," not to any specific attorney from HLP. Furthermore, after learning a newspaper reporter had asked to review the case file, the Court reviewed the file to see if any request to seal the record had ever been made and, when it concluded no such request had been made, informed the parties of the reporter's request in order that they could prepare for any publicity. Even before any hint of interest by news reporters, however, numerous attorneys from various firms asked to see copies of the Sanctions Order, apparently having been invited to do so by HLP and MMS themselves for purposes of obtaining future representation. It is, thus, not surprising that news organizations learned about the Sanctions Order as well. Any hint that the Court affirmatively undertook to publicize the Sanctions Order to the public or the bar is just wrong.

Second, the fact that the Sanctions Order was made the subject of a news report does not change the Court's analysis. The law and facts of this case are the same, regardless of the degree to which the public is aware of them. Federal Court is a public forum; those who participate in it, whether as parties, counsel, or triers of fact, must live with the fact that their conduct may be subjected to public scrutiny. For the reasons previously stated, and without regard to the existence of news reports, the Court finds an evidentiary hearing is unnecessary.

### II. Motion to Quash or Modify Subpoena

■ To support its brief in opposition to MBI's written motion for sanctions, HLP submitted to the Court two affidavits: one from MMS's outside accountant M. Patrick Monaghan, and one from MMS General Counsel Joanne Maxwell. MMS submitted

---

9. If, upon review of the objections, the Court concludes an evidentiary hearing would be use-

ful, it can and will set one at that time.

these affidavits and their accompanying exhibits to the Court via letter dated November 3, 1995; MMS sent a copy of this letter, but not the affidavits, to MBI. Upon learning of the existence of the affidavits (several months after they were submitted to the Court), MBI sought their production. MMS moved for a protective order, which this Court denied. MBI then served a subpoena upon HLP to produce these affidavits, which HLP now seeks to quash.

Because both MMS and the Court relied on the affidavits in the course of arguing and deciding the motions for sanctions, the affidavits are incorporated into and made a part of the Court's file. Given that this Court earlier denied MMS's motion to place the affidavits under seal, the affidavits are now available for anyone to view and copy. Because MBI may so easily obtain the affidavits merely by visiting the Courthouse, the Court finds that the subpoena upon HLP is unnecessary. Accordingly, the motion to quash is GRANTED.

**IT IS SO ORDERED.**