J-A19014-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SOLARA VENTURES IV, LLC, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PNC BANK, NATIONAL ASSOCIATION, SUCCESSOR-IN-INTEREST TO NATIONAL CITY BANK, | |
| Appellee | No. 1212 WDA 2013 |

Appeal from the Judgment Entered September 11, 2013
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 10-009270

BEFORE:  BENDER, P.J.E., OLSON, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED AUGUST 07, 2014**

Appellant, Solara Ventures IV, LLC, appeals from the judgment entered September 11, 2013, against Appellant and in favor of PNC Bank, National Association, Successor-in-Interest to National City Bank (PNC), for $70,000.  At issue are three orders: the first, entered January 29, 2013, imposed sanctions against Appellant for discovery violations, and the remaining two, entered July 23, 2013, dismissed this action and awarded PNC attorneys' fees.  We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

Appellant is a real estate developer.[1]  In 2007, Appellant commenced a development project in the city of Pittsburgh known as the Otto Milk Factory Condominiums (the Project).  Appellant secured financing for the Project through National City Bank.  Subsequently, Appellant sought additional financing to cover higher than expected construction costs.  According to Appellant, National City Bank assured Appellant that additional financing was forthcoming.  However, National City Bank was acquired by PNC, which thereafter declined Appellant further financing.  Appellant obtained financing from a third party and completed the Project.

In May 2010, Appellant commenced this litigation, asserting breach of contract and claiming in excess of two million dollars' damages associated with Appellant's efforts to secure sufficient financing to complete the Project. The parties began the discovery process, and in October 2010, PNC requested electronically-stored information from Appellant.

Thereafter, in a dispute ongoing for more than two years, Appellant offered a series of inconsistent, seemingly contradictory reasons for its noncompliance with PNC's discovery request.  For example, in December 2010, Appellant suggested that a computer virus had rendered such electronically-stored information irretrievable but claimed the computer hard

_____

[1] Appellant's sole member is Jack Benoff.  For convenience, we will attribute certain actions taken by Mr. Benoff to Appellant.

drives had been preserved for inspection.  **See** PNC's Motion for Spoliation Sanctions, Exhibit 2, at 4.  Later, in April 2011, Appellant indicated that the virus-ridden computer had been "fried and trashed," thus suggesting that the computer hard drives were not preserved.  **See id.**, Exhibit 3, at 2.

In March 2012, Appellant informed PNC that (1) a virus had not impacted its ability to retrieve email correspondence; (2) it had compiled and presented to PNC two discs containing all of Appellant's email correspondence extracted from its computer; and (3) Appellant's counsel maintained a copy of the discs for inspection.  **See id.**, Exhibit 6, at 3 (document paginated incorrectly).  In April 2012, Appellant testified via deposition that it did not maintain historical emails relevant to the Project because (1) Appellant's practice was not to retrieve or transfer email from an old computer onto a new one; (2) Appellant had purchased at least one new computer since the Project began; (3) Appellant did not archive old emails; and (4) Appellant "double-deleted" email correspondence.  **See id.**, Exhibit 1, at 200-06.  Also in April 2012, Appellant reiterated that it had made a "diligent search" and "produced all documents" in his possession responsive to PNC's request.  **See id.**, Exhibit 7, at 2.  Thereafter, in May 2012, Appellant produced the two discs, previously mentioned, containing approximately 740 emails.  None of the emails produced predated the commencement of this litigation.  Nevertheless, Appellant had attached historical emails, contemporaneous with the Project, to his complaint.

In July 2012, PNC filed a motion seeking sanctions based upon allegations of Appellant's noncompliance with its discovery obligations and spoliation of evidence. Appellant responded in August 2012, advising the trial court that (1) Appellant had engaged a technical services company to retrieve approximately 41,000 emails automatically archived by Appellant's email application; (2) the emails were neither organized nor indexed; and (3) Appellant had reviewed the emails and selected approximately 2,100 emails for production. *See* Appellant's Brief in Opposition to PNC's Motion for Spoliation Sanctions, at 2-4. The period in which this email correspondence occurred is not clear from the record.

Following at least one hearing and extensive briefing, the trial court granted PNC's motion in part. *See* Trial Court Order (01/29/2013). The court declined to dismiss Appellant's case as requested by PNC. The court further declined either to preclude Appellant's evidence of damages or to instruct a jury that Appellant's bad faith required an adverse inference. Rather, the court awarded PNC attorneys' fees incurred in pursuing its motion.[2] As a further sanction, the court directed Appellant to make available to PNC the approximately 41,000 emails retrieved from Appellant's archives. Finally, in light of Appellant's shifting responses to PNC's

_____

[2] Thereafter, PNC submitted documentation supporting its request for $115,353.19 in attorneys' fees and costs.

- 4 -

legitimate requests for discovery, the court directed Appellant's counsel to secure these documents at the same time counsel informed Appellant of the court's order to make these emails available to PNC.

Appellant did not file a motion for reconsideration, nor did Appellant comply with the order. Appellant's counsel informed Appellant of the substance of the order but failed to either secure the 41,000 emails or make them available to PNC. Thereafter, Appellant filed an interlocutory appeal, which was quashed by this Court. *See* Order of the Superior Court, 322 WDA 2013 (05/20/2013).

In February 2013, PNC moved for further sanctions, again seeking dismissal of Appellant's case, based upon Appellant's non-compliance with the court's initial sanctions order. In its brief filed in opposition to PNC's motion, Appellant asserted, for the first time, that a portion of the 41,000 emails were subject to the attorney-client privilege.

The trial court ordered deposition testimony to establish whether Appellant had complied with the sanctions order. The court expressed its specific concern that Appellant failed to comply with the provision directing counsel to take possession of the emails at the same time as counsel informed Appellant that the emails were to be surrendered to PNC. Appellant's counsel acknowledged his failure to comply, testifying via deposition that counsel informed Appellant of the sanctions order approximately one month prior to taking possession of the 41,000 emails.

Thereafter, in July 2013, the trial court dismissed Appellant's case and granted PNC $70,000 in attorneys' fees. **See** Trial Court Orders (07/23/2013).

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court did not issue an opinion.

Appellant raises the following issues on appeal: (1) whether the trial court's imposition of sanctions constitutes reversible error; (2) whether the court erred in dismissing this action based upon Appellant's noncompliance with the sanctions order; and (3) whether the award of $70,000 in attorneys' fees was grossly excessive. **See** Appellant's Brief at 5-6 (edited for ease of analysis).

We review Appellants' claims pursuant to the following standard:

> Generally, imposition of sanctions for a party's failure to comply with discovery is subject to the discretion of the trial court, as is the severity of the sanctions imposed. Nevertheless, the court's discretion is not unfettered: because dismissal is the most severe sanction, it should be imposed only in extreme circumstances, and a trial court is required to balance the equities carefully and dismiss only where the violation of the discovery rules is willful and the opposing party has been prejudiced.

**Rohm & Haas Co. v. Lin**, 992 A.2d 132, 142 (Pa. Super. 2010) (citations omitted). "An abuse of discretion is not merely an error of judgment. It requires a showing of manifest unreasonableness, partiality, ill-will, or such lack of support as to be clearly erroneous." **Christian v. Pa. Fin. Responsibility Assigned Claims Plan**, 686 A.2d 1, 5 (Pa. Super. 1996).

In its first issue raised on appeal, Appellant contends that the trial court abused its discretion by imposing sanctions. In support of this contention, Appellant argues (1) the record does not support the trial court's finding that Mr. Benoff sought to "mislead and confuse[]" the court and PNC; (2) the trial court erred by imposing sanctions without an evidentiary hearing; and (3) the court's suggestion that Appellant should have invited PNC to assist in the retrieval of archived emails was erroneous. Appellant's arguments are devoid of merit.

Initially, Appellant argues that the record does not support the trial court's finding that Appellant misled the court and PNC. We disagree. The court found expressly that Mr. Benoff "ha[d] not acted in good faith throughout the discovery process." Trial Court Memorandum (01/29/2013), at 7. Thereafter, the trial court further found "considerable merit" in PNC's argument that "there must be important documents that have been hidden or destroyed because of Mr. Benoff's considerable efforts to mislead and confuse." *Id.*

"This court is bound by the trial court's findings of fact, unless those findings are not based on competent evidence." *GMH Assocs., Inc. v. Prudential Realty Grp.*, 752 A.2d 889, 898 (Pa. Super. 2000). Competent evidence, comprised of Appellant's own admissions and filings, established that Appellant provided contradictory explanations for its repeated failure to

comply with its discovery obligations. Accordingly, we are bound by the court's findings and discern no abuse of the court's discretion.

Appellant also claims that he was entitled to an evidentiary hearing prior to the imposition of sanctions. Appellant cites in support the long-standing precedent of ***Borough of Nanty-Glo v. Am. Sur. Co. of N.Y.***, 163 A. 523 (Pa. 1932) (reversing judgment entered upon a directed verdict where movant relied solely upon testimonial evidence), and invokes his right to due process.

Appellant never requested a hearing from the trial court. Accordingly, we deem this issue waived. ***See*** Pa.R.A.P. 302(a); ***see***, ***e.g.***, ***Irwin Union Nat. Bank & Trust Co. v. Famous***, 4 A.3d 1099, 1103 (Pa. Super. 2010) (finding waiver where Appellant failed to seek an extension of the discovery period from the trial court); ***Brown v. Philadelphia Tribune Co.***, 668 A.2d 159, 162 (Pa. Super. 1995) ("[I]ssues not raised below are waived on appeal. This is true even if the issues raised on appeal are of constitutional dimension.") (citation omitted).

Appellant offers no support for its contention that ***Nanty-Glo*** applies in the discovery context, and we are aware of none.

> Testimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the [factfinder].
>
> If, however, the moving party supports its motion for summary judgment with admissions by the opposing party, ***Nanty−Glo*** does not bar entry of summary judgment.

***DeArmitt v. N.Y. Life Ins. Co.***, 73 A.3d 578, 595 (Pa. Super. 2013) (citations omitted). Nevertheless, assuming *arguendo* its application is appropriate, the trial court granted PNC's motion for sanctions based upon *Appellant's* admissions. Moreover, such admissions were not limited to oral testimony or affidavits, but included documentary evidence. Thus, absent waiver, Appellant's reliance upon the ***Nanty-Glo*** rule is misplaced. ***DeArmitt***, 73 A.3d at 595.

Appellant's due process argument fares no better.[3] Appellant offers no relevant authority for its position that due process *required* the trial court to afford Appellant an evidentiary hearing, particularly in the absence of a request for one. ***See***, ***e.g.***, ***Rogal v. Am. Broad. Cos., Inc.***, 74 F.3d 40, 44 (3d Cir. 1996) (requiring an evidentiary hearing "[u]nder the particular facts and circumstances of the case," but recognizing that the need for an evidentiary hearing is left to the trial court's sound discretion). Again, we discern no abuse of discretion.

In its final argument addressing whether the court's imposition of sanctions constituted reversible error, Appellant challenges the trial court's criticism of Appellant for not inviting PNC to participate in the retrieval of the

---

[3] Appellant erroneously invokes the Fifth Amendment of the U.S. Constitution, whereas the Fourteenth Amendment affords the right of due process in state court.

archived emails. The following is the relevant excerpt of the court's memorandum:

> Because of the conflicting responses to the discovery requests, PNC has never had the opportunity to become involved in the retrieval process. If there had been a virus, the computer should be available. If the computer or its hard drive had been destroyed, [PNC] should have been told in [Appellant's] initial response to [PNC's] first request for documents. Even if Mr. Benoff had only recently learned that it was possible for documents to be retrieved, PNC should have been told and invited to participate in the process. Finally, a decision as to which of the 41,000 emails should be produced was made only by Mr. Benoff who has not acted in good faith throughout the discovery process.

Trial Court Memorandum (01/29/2013), at 7.

According to Appellant, Pennsylvania Rule of Civil Procedure 4009.12 governs Appellant's responsibility to include PNC in the discovery process. Rule 4009.12 provides, in relevant part:

> Where the documents may be identified only after review of a larger group of documents, and the burden of identifying the documents would be substantially the same for the party serving the request as for the party served, *the party served **may** afford the party serving the request reasonable opportunity to identify the documents*, to examine or inspect them and to obtain copies.

Pa.R.C.P. 4009.12(a)(2)(i) (emphasis added). Based upon this provision, Appellant asserts that it had no obligation to include PNC in the email retrieval process and concludes that the court's suggestion otherwise establishes an abuse of discretion.

Appellant ignores the context within which the court's memorandum was issued. In the above excerpt, the court was not discussing Appellant's

discovery obligations pursuant to Rule 4009.12. Rather, the court was responding to PNC's motion for sanctions and, thus, proceeding under Rule 4019, which affords the trial court considerable discretion in crafting an appropriate remedy for a party's discovery violations. *See* Pa.R.C.P. 4019(a)(1)(viii) ("The court may, on motion, make an appropriate order if … a party or person otherwise fails to make discovery or to obey an order of court respecting discovery."); Pa.R.C.P. 4019(c)(5) ("The court, when acting under subdivision (a) of this rule, may make … such order with regard to the failure to make discovery as is just."); ***Rohm & Haas Co.***, 992 A.2d at 142.

Appellant did not proceed through the discovery process in good faith. For more than two years, it offered contradictory explanations for its failure to produce electronically-stored information. Finally, in response to PNC's motion for sanctions, Appellant revealed that it had undertaken "the formidable task" of retrieving emails it had long claimed did not exist and "the additional gargantuan task" of reviewing 41,000 emails to select (without the benefit of legal counsel) approximately 2,100 "relevant" emails. ***See*** Trial Court Memorandum (01/29/2013), at 6 (quoting Appellant's Brief in Opposition to PNC's Motion for Sanctions). The trial court's suggestion that Appellant could, or even should, have included PNC in the retrieval process merely highlights the exasperation with which the court viewed Appellant's dilatory efforts to meet its legitimate obligations. This does not constitute an abuse of the court's discretion.

In its second issue raised on appeal, Appellant contends the trial court erred in dismissing this action based upon Appellant's noncompliance with the sanctions order. Initially, Appellant challenges the following provisions of the sanctions order:

> [1] Within twenty (20) days [Appellant] shall make available to [PNC's] counsel the approximately 41,000 documents that were retrieved. … [2] If these documents are not presently in the possession of [Appellant's] counsel, [Appellant's] counsel shall obtain the documents from Mr. Benoff at the same time [Appellant's] counsel advises him that these documents will be turned over to [PNC's] counsel.

*See* Trial Court Order (01/29/2013), at 2.

According to Appellant, the "turnover" provision was overly broad, as most of the documents were not relevant or were subject to attorney-client privilege. Appellant also argues that the provision directing counsel to secure the emails "at the same" as counsel advised Appellant that the emails were to be "turned over" was fundamentally unfair, as it required counsel to violate the Pennsylvania Rules of Professional Responsibility and "trick" Appellant.

We deem these arguments waived. Appellant did not file a motion to reconsider the court's sanctions order, nor otherwise challenge the order's provisions in a timely manner. *See* Pa.R.A.P. 302(a). Moreover, Appellant did not invoke the attorney-client privilege until long after the deadline to comply had passed. *Id.*; *see also Law Office of Douglas T. Harris, Esq. v. Phila. Waterfront Partners, LP*, 957 A.2d 1223, 1232 (Pa. Super.

2008) (concluding that a party implicitly waives attorney-client privilege if counsel does not raise it in a timely manner).[4]

Appellant also contends that dismissal was premature, citing in support **Schroeder v. Commonwealth of Pennsylvania, Dep't of Transp.**, 710 A.2d 23 (Pa. 1998). According to Appellant, in deciding the proper penalty for the spoliation of evidence, a trial court must consider "the availability of a lesser sanction that will protect the opposing party's rights and deter future similar conduct." **Schroeder**, 710 A.2d at 27. Appellant contends the trial court failed to do so here.

We do not disagree with Appellant's statement of law. Nevertheless, Appellant's reliance upon **Schroeder** is misplaced. Appellant suggests to this Court that the trial court dismissed its case merely for its failure to produce documents. However, Appellant conflates several discrete steps in the trial court's resolution of PNC's motion for sanctions. When the trial court imposed sanctions upon Appellant in January 2013, it specifically declined PNC's request for dismissal, concluding that PNC had sufficient access to "most of the important documents that Appellant should have

---

[4] We note further that Appellant's "trick" argument is without merit. As clearly explained by the trial court, "[t]he purpose of the provision … was to remove any opportunity for Mr. Benoff to destroy records once he learned that the documents that he had not produced would be made available to defendant," a well-founded concern in light of Appellant's efforts to avoid discovery. **See** Trial Court Memorandum (04/11/2013), at 1-2. Thus, absent waiver, we discern no abuse of discretion.

produced" through third-party discovery. **See** Trial Court Memorandum (01/29/2013). Thus, the court implicitly found that PNC had suffered little or no prejudice at that time. Thereafter, in April 2013, the trial court notified the parties of its intent to dismiss Appellant's case if noncompliance with the sanctions order was established. In July 2013, following further deposition testimony and additional briefing, the court dismissed Appellant's case. The trial court's methodical approach belies Appellant's suggestion that dismissal was premature. Rather, dismissal was the cumulative result of Appellant's repeated failures to proceed with discovery in good faith and its willful violation of the court's sanctions order. As it is apparent that the trial court's initial attempt to remedy Appellant's discovery violations did not successfully deter Appellant from engaging in further dilatory behavior, we discern no abuse of the court's discretion in dismissing this action. **Schroeder**, 710 A.2d at 27; **see also Rohm & Haas Co.**, 992 A.2d at 142 (directing a trial court to consider several factors before dismissing a case, including "the nature and severity of the discovery violation" and the "defaulting party's willfulness or bad faith").

Finally, Appellant contends that the award of $70,000 in attorneys' fees was "grossly excessive." We disagree.

"Counsel fees are awarded at the trial court's discretion." **Jacobs v. Jacobs**, 884 A.2d 301, 307 (Pa. Super. 2005) (affirming the trial court's award of one-third of wife's counsel fees as a sanction for husband's

discovery violations in an equitable distribution proceeding).  Here, pursuant to the court's sanctions order, PNC submitted documentation supporting its request for $115,353.19 in attorneys' fees and costs.  Upon consideration of this request, the trial court declined to award PNC the full amount, awarding instead $70,000.  We discern no abuse of discretion.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/7/2014