555 A.2d 1324

**OBERG INDUSTRIES, INC., Appellee,**

v.

**David R. FINNEY and Penn United Technology, Inc., t/d/b/a American Carbide Tooling, Appellee.**

**Appeal of PENN UNITED TECHNOLOGY, INC., t/d/b/a American Carbide Tooling, Appellant.**

**OBERG INDUSTRIES, INC., Appellee,**

v.

**David R. FINNEY and Penn United Technology, Inc., t/d/b/a American Carbide Tooling, Appellee.**

**Appeal of David R. FINNEY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 13, 1988.

Filed March 15, 1989.

Reargument Denied May 23, 1989.

---

Margaret F. Houston, Pittsburgh, for Penn United, appellant (at 863) and for Penn United, appellee (at 924).

Richard S. Ombres, Pittsburgh, for Finney, appellee (at 863) and for Finney, appellant (at 924).

Ronald W. Crouch, Pittsburgh, for Oberg, appellee.

Before BROSKY, DEL SOLE and JOHNSON, JJ.

DEL SOLE, Judge:

This is an appeal from a trial court order which granted Appellee, Oberg Industries, Inc.'s, request for a preliminary injunction against its former employee, Appellant, David R. Finney. Mr. Finney and his new employer, Penn United Technology, Inc., assert that the court erred in finding, absent a restrictive covenant, that it was necessary to issue an injunction to prevent Mr. Finney from "inevitably" disclosing certain trade secrets as a salesman for a competitor. In the alternative, Appellants also allege that the injunction is impermissibly vague and overly broad. Because we find support for Appellants' first claim and reverse the trial court's order, we will not address the second argument advanced by Appellants.

Certain findings were made by the trial court regarding Mr. Finney's position with his former employer and the knowledge he obtained during the period of his employment. Oberg, which produces carbide stamping dies and related items hired Finney, who had no significant prior experience in the industry, in 1966. He began work as a grinder but ultimately was promoted to the position of General Sales Manager. The court found that Finney learned virtually all of the information relating to the development, design, cost, profitability and production of Oberg's products as well as information pertaining to the company's sales and marketing goals and strategies. It further noted that he had access to the status and details of all current negotiations, understandings, requests for quotations, purchase orders, customer's special needs, manufacturing costs, and internal yields on products. He was also

able to access Oberg's methods of engineering, pricing, estimating and scheduling, and other details of Oberg's financial standing. As a key employee, Finney and a small number of other Oberg employees received three reports, which the court found constituted trade secrets. The court reached this conclusion based upon its findings that the reports were compiled by Oberg at great expense and effort, the reports were, to Oberg's knowledge, the only reports of this information in the world and Oberg had the right to expect that they would be kept confidential.

The reports at issue consist of three separate items. The first is a customer sales activity report. Prepared quarterly, it lists the name of every customer in each of Oberg's divisions along with the amount of the product which has been shipped to that customer for the four preceding calendar years as well as for the year to date. The second item is a quotation recap report. The report includes every quotation made to a customer or potential customer, the number of hours estimated to manufacture the requested product, and the projected yield per hour. It was prepared weekly. The final report is a business directory, a master customer address and telephone reference. It lists not only customer names, but contact persons. Approximately 4,000 names appear on this list.

It is significant to note that the trial court did not find that Finney took these reports with him when he left Oberg's employ in 1988. Nor did it find that Finney revealed the contents of these reports. Nevertheless the court concluded that Finney "would utilize his knowledge of the plaintiff's trade secrets either knowingly or subconsciously for the benefit of defendant employer, and to the detriment of plaintiff". Trial Court Opinion at 6. To prevent such disclosure, the court issued an order enjoining and restraining Finney from employment with Penn United which competes with Oberg, from disclosing any trade secrets, from contacting or soliciting orders from present and former customers of Oberg, and from contacting present customers of Penn United who "have in the past,

presently, or in the future may purchase products ... offered for sale or under development by Oberg." Order dated May 17, 1988.

An injunction may be issued by a court of equity to protect an employer from the unlicensed use of its trade secrets by an exemployee provided the employee entered into a restrictive covenant, or was bound to secrecy by virtue of a confidential relationship existing between the employer and the employee. *Felmlee v. Lockett*, 466 Pa. 1, 351 A.2d 273, 276 (1976). These secrets must be particular secrets of the employer, not general secrets of the trade in which the employer is engaged. *Trilog Associates, Inc. v. Famularo*, 455 Pa. 243, 314 A.2d 287 (1974). However, an employee's aptitude, skill, dexterity, manual and mental ability and such other subjective knowledge obtained during the course of employment are not the property of the employer, and cannot be a legally protected trade secret. *Felmlee v. Lockett, supra.*

Although the materials involved in this case were nontechnical and there was no restrictive covenant or actual disclosure found, the trial court concluded that trade secrets would inevitably be disclosed, and on that basis issued an injunction. Appellee submits that the trial court's action is fully supported by *Air Products & Chemicals, Inc. v. Johnson*, 296 Pa.Super. 405, 442 A.2d 1114 (1982), a case which it claims is controlling. In *Air Products* a former employer brought an action seeking to enjoin an employee from accepting employment with another employer for a two year period. As in this case, no restrictive covenant agreement was entered and the employee did not take any documents or property belonging to his former employer to his new job. Further, the confidential information was also of a non-technical nature. The court found that an injunction was necessary to enjoin the employee from accepting the new position because it would be impossible for him to perform his duties without drawing on his knowledge of this confidential information.

Appellants seek to distinguish *Air Products* from the instant case based upon their facts. They submit that the decision in *Air Products* is not controlling because the nature of the business, the nature of the employee's particular job and the nature of the information sought to be protected differs from that found in this case. Appellants point to the fact that the employer in *Air Products* was involved in a highly technical enterprise and the employee was a trained engineer who was involved with the research, design and manufacture of the product produced by his employer. They submit that these facts are markedly different from those found in this case where the employee was hired with only a high school degree and his functions were sales oriented.

The employer in *Air Products* was a large manufacturer and distributor of industrial gases. It's employee possessed a degree in petroleum engineering and worked in the area of on-site gas sales. The new employer had not yet developed information related to on-site activities and it was feared that the employee would transfer information including technical data on the methods of delivery of on-site gas, the status of negotiations with customers, and the analysis of market opportunities to his new employer. *Supra*, 296 Pa.Superior Ct. at 410, 442 A.2d at 1117. The trial court found that because the employee knew the results of the research and field-testing in this area his knowledge would be extremely valuable to a competitor since it would cut the developmental risk involved in a similar project. *Id.* On appeal the Superior Court affirmed the issuance of an injunction and the determination that it would be inevitable that trade secrets would be disclosed if the employee accepted his new position. In reaching its decision, the court focused on the employee's knowledge of the technical problems and safety precautions associated with the technology of nitrogen injection, the specifics of field testing the recovery of heavy oil, which was not generally known, and the material to be used as the adsorbent in the production of nitrogen, which was not known outside of the company. *Id.*, 296 Pa.Superior Ct. at 414–415, 442 A.2d at 1119.

The appellant in *Air Products* sought to argue that the trial court erred in its ruling because the cases upon which it relied differed from the facts of its case. They argued that a decision of the Federal District Court for the Southern District of Ohio, (*Emery Industries, Inc. v. Cottier*, 202 U.S.P.Q. 829 (1978)), was inapplicable because the danger of disclosure was different and because the case involved an employee providing technical services while the employee in *Air Products* was involved in sales. Although it was true that the employee in *Air Products* did work in the field of sales, the court was not persuaded by the appellant's arguments. It stated: "The circumstances herein indicate a likelihood of disclosure similar to that found in *Emery*, supra, and the secret about which Johnson had knowledge could be appreciated by him both as an engineer and as a manager." *Air Products and Chemicals, Inc. v. Johnson*, *supra* 296 Pa.Super. at 423, 442 A.2d at 1123.

The *Air Products* court also rejected the argument that its case was more similar to *Continental Group, Inc. v. Amoco Chem. Corp.*, 614 F.2d 351 (3rd Cir.1980), where it was held that the risk of an inadvertent disclosure was insufficient to justify the granting of a preliminary injunction. In dismissing this claim the court remarked:

> *Continental*, supra, involved an employee whose training was as a businessman. He had no education in engineering. His tasks were exclusively managerial. Johnson, on the other hand, is a trained engineer. While his vocational responsibilities are substantially managerial in nature, his efficiency and effectiveness is certainly enhanced by his background in engineering. We hold that the instant case is more similar to *Emery*, supra, where a chemical engineer was involved in research, design, manufacture, and marketing of the product. Johnson is an engineer who, though in a supervisory/managerial capacity was involved in the research, design and manufacture of industrial gases for Air Products. He was clearly involved also in the manufacture and marketing of the products

produced by Air Products. Accordingly, we do not find Johnson's and Liquid Air's argument convincing.

*Id.* 296 Pa.Super. at 424 n. 10, 442 A.2d at 1124 n. 10.

We find this rationale in *Air Products* instructive. The decision therein was based upon the particular knowledge possessed by the employee as it related to the nature of his job. Although the employee in *Air Products* was involved in sales, as is Finney in this case, it is clear that the court centered on his engineering background and the special knowledge he possessed relating to a method of oil recovery not yet developed by the competitor company.

■ In this case, Finney possessed no such educational background. He started with the company as a grinder and through the years worked his way into sales. It can not be disputed that Finney became acquainted with his employer's business decisions and philosophies. And, although it is true that at the time of his departure Finney was a valuable employee and privy to information of a confidential nature, this information is not of the type found in *Air Products.*

It must be recalled that this case does not involve a situation where an enforceable restrictive covenant was entered between the employer and its employee. Further, the record does not indicate that the confidential reports which Finney received in his position were taken by him to be utilized in his new position and some of these reports, such as the list of customers and their contact persons, were so voluminous that they could not have been committed to memory. Finally, Finney's position in the company and the knowledge he obtained while in that position do not demonstrate an inevitability of disclosure as that found in *Air Products* which would require the issuance of an injunction in this case.

For the foregoing reasons we reverse the order of the trial court and vacate the preliminary injunction issued in this case.

Order reversed. Jurisdiction relinquished.