**ROHM AND HAAS COMPANY**

**v.**

**Dr. Manhua Mandy LIN, EverNu Technology LLC, Philadelphia Newspapers LLC and Willow Grove BK.**

**Appeal of Dr. Manhua Mandy Lin.**

**Rohm and Haas Company**

**v.**

**Dr. Manhua Mandy Lin, EverNu Technology LLC, Philadelphia Newspapers LLC and Willow Grove BK.**

**Appeal of EverNu Technology LLC.**

Superior Court of Pennsylvania.

Argued March 17, 2009.
Filed March 1, 2010.
Reargument Denied May 7, 2010.

Hugh Hutchinson, Philadelphia, for Lin.

Andrew Klein and John Chesney, Philadelphia, for EverNu.

Mari M. Gursky Shaw, Philadelphia, for Rohm and Haas, appellee.

BEFORE: BENDER, SHOGAN, JJ. and McEWEN, P.J.E.

OPINION BY SHOGAN, J.:

¶ 1 In these consolidated appeals, Dr. Manhua Lin ("Dr. Lin") and EverNu Technology LLC ("EverNu") appeal from the order entering a default judgment and a permanent injunction in favor of Dr. Lin's former employer, Rohm and Haas Company ("Rohm and Haas"), as a discovery sanction against Dr. Lin. After careful review, we affirm in part, vacate in part and remand for further proceedings consistent with this Opinion. We quash EverNu's appeal.[1]

¶ 2 A previous panel of this Court set forth the factual and procedural history of this case as follows:

1. We note that Philadelphia Newspapers LLC and Willow Grove Bank are named in the caption. Philadelphia Newspapers LLC was permitted to intervene below for the limited purpose of having access to the sealed record in order to report on the case. Docket Nos. 594–602, 607–608, and 625–631. Willow Grove Bank became involved in this matter as a garnishee when Rohm and Haas attached EverNu's accounts. Docket Nos. 467–470, 484–485, 491, 499, 524, 558, and 560. However, they did not participate in this appeal.

In the present case, the record indicates that Appellant Manhua Mandy Lin, Ph.D. (Dr. Lin) was employed as a research scientist by Appellee Rohm and Haas Company (Rohm and Haas) from 1989 until November of 1999. Rohm and Haas is a manufacturer of specialty chemicals. Its line includes polymers comprising [sic] coatings and adhesives. Acrylic acid is a central component and starting material in over 50% of its products.

The specialty chemicals market is intensively competitive. Rohm and Haas contends with many commercial rivals who are seeking to develop new methods for producing acrylic acid. Rohm and Haas, therefore, has funded a costly and continuing research project charged with analyzing and developing methods for synthesizing acrylic acid more cheaply and efficiently. Should one of its competitors develop a less expensive process for synthesizing high quality acrylic acid, Rohm and Haas would be at a serious commercial disadvantage.

Dr. Lin was hired by Rohm and Haas in 1989. On January 3, 1989, Dr. Lin executed a confidentiality agreement that precluded her from disclosing any trade secret information she learned through her work for the company. Specifically, she promised that she would "not divulge such information to outsiders or other unauthorized persons either while employed by Rohm and Haas or afterwards." Confidentiality and Employment Agreement, 1/3/89, at 1, ¶ II. Dr. Lin also promised that, "upon termination of [her] employment," she would "return to Rohm and Haas all papers, notes, books, or other documents or property belonging to Rohm and Haas or relating to its business." *Id.* at ¶ VI.

Dr. Lin was promoted in 1995 to a position that gave her access to confidential and trade secret information, including information relating to the catalytic synthesis of acrylic acid. She was one of seven senior scientists in the monomer technology group performing research related to catalytic alkane oxidation. Dr. Lin believed that she was not given proper recognition by her superiors for her work and that this was caused by disparagement of her gender and national origin. She therefore initiated a complaint with the federal Equal Employment Opportunity Commission (EEOC). As a result of an EEOC mediation, Dr. Lin agreed to leave Rohm and Haas in exchange for certain emoluments and termination benefits.

On November 10, 1999, Dr. Lin signed an agreement that specifically stated she could publish scientific papers, but that she could not reveal trade secrets. Her right to publish was subject to review concerning trade secrets by Dr. Scott Han, an employee of Rohm and Haas. In the event of a disagreement between Drs. Lin and Han, Dr. Charles Tatum, the Chief Technology Officer for Rohm and Haas, was authorized to review the disputed matter. EEOC Settlement Agreement, 11/10/99, at ¶ 7.I. Anticipating Dr. Lin's separation, Rohm and Haas issued a document captioned "Departing Employee Notice and Acknowledgement of Continuing Obligations." This document delineated the manner in which confidential information was to be handled upon termination of Dr. Lin's employment. The parties executed an additional agreement which specifically acknowledged that Dr. Lin remained bound by the confidentiality agreement she signed on January 3, 1989, and that she also was bound by the confidentiality requirements of the "Departing Employee Notice and Acknowledgement of

Continuing Obligations." Agreement and Release, 11/15/99, at 3, ¶ 13.[1]

The trial court found that, despite the requirements of the various confidentiality agreements, prior to her departure from Rohm and Haas Dr. Lin copied hundreds of confidential documents onto high-storage-capacity computer disks, which she took with her. She also removed reference books belonging to Rohm and Haas.

---

[1] The Agreement and Release is dated November 15, 1999. It was not executed until November 17, 1999, by Dr. Lin. A representative of Rohm and Haas executed the agreement the following day. Dr. Lin alleges that Dr. Tatum was removed from the reviewing process by agreement via a revision in the Agreement and Release. Dr. Lin's Brief at 9. However, neither the certified record nor Dr. Lin's reproduced record supports this assertion. *See* Agreement and Release, 11/15/99, at 2, ¶ C.5.h and Dr. Lin's Reproduced Record, Volume V, at 2238 (reproducing the Agreement and Release).

Dr. Lin had committed to delivering a scientific paper to the American Chemical Society (ACS) in March of 2000. Dr. Lin submitted an outline of her intended presentation to Dr. Han a few days before the meeting. However, Dr. Han did not have enough time to do a complete trade secret review. He therefore authorized presentation of the paper subject to the caveat that only 1996 or previous data could be used. This proviso was required because post–1996 data included critical documentation that constituted confidential trade secret information.

Dr. Han and another Rohm and Haas employee (Dr. Anne Gaffney) attended the 2000 ACS meeting. On March 28, 2000, Dr. Lin gave a presentation using post–1996 trade secret information concerning the catalytic synthesis of acrylic acid. It is customary in the scientific community to publish a paper conveying the substance of a presentation following the meeting at which the presentation was given. Rohm and Haas scientists were concerned that Dr. Lin would disclose additional trade secrets in her follow-up paper in order to better substantiate her oral presentation.

Although the certified record amply documents the specific confidential data concerning catalysts disclosed by Dr. Lin at the March 2000 ACS meeting, it would be inappropriate to detail that information in a judicial memorandum that is a matter of public record. Suffice it to state that we have scrutinized the record carefully and have found evidence of record that supports the trial court's determinations. *See, inter alia,* N.T., 2/26/01, at 10–67 (comprising the testimony of the Chairman of the Department of Chemical Engineering at the Pennsylvania State University to the effect that the information at issue in this case constitutes non-public data which is not generally known in the relevant scientific community that would be of value to a competitor of Rohm and Haas). We note additionally that the record indicates Dr. Lin did place additional trade secret information in her proposed paper. *See* N.T., 2/[26]/01 (Volume II), at 11–12 (comprising the testimony of Dr. Han concerning the draft of Dr. Lin's paper that he approved and the additions incorporated by the subsequent draft that Dr. Lin did not submit for Rohm and Haas approval).

Scientists at Rohm and Haas received notice that Dr. Lin was scheduled to present at an international symposium on oxidation catalysis in September of 2001. Rohm and Haas applied for a preliminary injunction to prevent Dr. Lin from disclosing further trade secret information and to require her to abide by the agreed upon trade secret review

process pending a final ruling. The trial court conducted ten days of hearings. On April 17, 2001, the trial court entered an order granting a preliminary injunction in favor of Rohm and Haas. The order specifically included the following:

1. Dr. Lin is enjoined from using, disclosing or divulging, directly or indirectly, any information that Rohm and Haas considered confidential or trade secret;

2. Dr. Lin is enjoined from making, releasing or disclosing any proposed scientific presentation or publication unless, after a 90–day trade secret review by Dr. Scott Han and/or Dr. Charles Tatum, the parties agree that such presentation or publication contains no Rohm and Haas trade secrets[.]

Order, 4/17/[01], at 2. The trial court also directed that the preliminary injunction would remain in effect until the final hearing of the case. *Id.*

Dr. Lin filed a motion to dissolve the preliminary injunction, which the trial court denied on April 26, 2001. Dr. Lin's timely notice of appeal followed on May 7, 2001.

*Rohm and Haas Company v. Dr. Manhua Mandy Lin,* 1246 EDA 2001, unpublished memorandum at 2–7 (Pa.Super. filed February 20, 2003). On appeal, this Court affirmed the order entering a preliminary injunction against Dr. Lin, stating: "[W]e conclude that the preliminary injunction entered in this case represents a balanced response to the evidence of record. We see no indication of legal error nor do we find abuse of discretion." *Id.* at 21.

¶ 3 The trial court updated the procedural history of this case in its 1925(a) opinion as follows:

Thereafter, [Rohm and Haas] sought various additional discovery from [Dr. Lin], in support of its underlying equity action and to enforce the preliminary injunction. In March 2003, Rohm and Haas had learned through its own independent research via the Internet that Dr. Lin's company, EverNu Technologies LLC [7] had received a government grant from the U.S. Department of Energy (DOE) for a project titled "Metal Oxide Catalyst for Methacrylic Acid Preparation via One–Step Oxidation of Isobutane." *See,* Rohm and Haas Motion to Compel Responses to Interrogatories, filed 6/27/03, at p. 4, ¶ 13, and Exhibit E. This information was not consistent with Dr. Lin's prior response to Rohm and Haas [sic] second set of interrogatories to which she stated that as of June 2000 EverNu had ceased all business operations. *See, Id.,* Exhibit B, (Lin's responses to interrogatory 4(d) [8] and 5). In April of 2003, [Rohm and Haas] served Dr. Lin with a second set of document requests and a fourth set of interrogatories relating to the applications she prepared in regarding [sic] this grant from the DOE and whether or not the application contained any of [Rohm and Haas'] trade secrets. *See, Id.,* at p. 5, ¶¶ 15, 16, 17. [Dr. Lin] responded by objecting to this discovery stating that she completed the grant application on behalf of her company EverNu and this information constitutes EverNu's proprietary information. *See,* Exhibits F & G (Rohm and Haas fourth set of interrogatories and [Dr. Lin's] responses) to Rohm and Haas Motion to Compel Responses to Interrogatories, filed 6/27/03.

---

[7] This is the company [Dr. Lin] founded in May–June 2000, shortly after leaving the employ of Rohm and Haas. Dr. Lin is the CEO and CTO of EverNu and the company's address is identified as [Dr. Lin's] home address. (NT, 12/12/03, p. 4); *see also,* Rohm and Haas Motion to Compel Responses to Interrogatories, filed 6/27/03. Rohm and Haas learned of this Company's existence

during a deposition of Lin on June 27, 2000. *See*, Rohm and Haas Motion to Compel Responses to Interrogatories, filed 6/27/03.

[8] This interrogatory specifically asked Dr. Lin to "[d]escribe in detail each and every attempt which you made since Nov. 1999 to find employment or other contractual engagement for your services, and with respect to each such attempt identify the employer, company, business entity or persons with whom you sought employment or a business/professional relationship, describe in detail the process by which you sought employment or the establishment of a business/professional relationship, describe the result and current status of you [sic] efforts, and identify each and every document which relates to such efforts". In Subsection (d) of [Dr. Lin's] response, she stated "May–June 2000, incorporated EverNu Technology" and "June 2000, EverNu Technology stopped all of its on-going business activities". *See*, [Dr. Lin's] response to [Rohm and Haas'] second set of interrogatories, attached as Exhibit 'B' to Rohm and Haas Motion to Compel Responses to Interrogatories, filed 6/27/03. [Dr. Lin] was obligated to update her responses to the interrogatories had any circumstance changed, which was never done. This Court directed [Dr. Lin] to provide a complete response to these interrogatories however, Dr. Lin never corrected her response despite the fact that it is inconsistent with the DOE grant EverNu had received.

Thereafter, Rohm and Haas filed a Motion to Compel against Dr. Lin regarding its fourth set of interrogatories, second document request and numbers four (d) and five of its second set of interrogatories. On August 11, 2003, by separate orders, this Court granted Rohm & Haas' Motions to Compel Production of Documents and Responses to Interrogatories and subsequently denied Dr. Lin's request for reconsideration of same on September 5, 2003. Nonetheless, [Dr. Lin] continued to violate the orders of the Court by not providing discovery.

Subsequently, Rohm and Haas filed a Motion for Sanctions against Dr. Lin. By Order dated January 10, 2005, this Court granted the Motion and directed [Dr. Lin] to provide the previously ordered discovery and pay [Rohm and Haas] $1,000.00 in attorney's fees. Again, [Dr. Lin] failed to comply.

[Rohm and Haas] filed a Motion for Additional Sanctions against [Dr.] Lin, which this Court granted on June 2, 2005. That order partially precluded [Dr. Lin] from presenting a defense at trial against some of Rohm and Haas [sic] claims and also imposed a fine of $100.00 per day. Nonetheless, [Dr. Lin] has failed to comply with the orders from this Court and has never paid any amount toward counsel fees and fines.

Despite the findings of the trial court and the Superior Court that Dr. Lin had engaged in wrongdoing with regard to her use of Rohm and Haas [sic] trade secrets, [Dr. Lin] will not respond to discovery requests and claims that the courts [sic] decisions were incorrect. Furthermore, [Dr. Lin] advances the unpersuasive argument that [Rohm and Haas'] claims are a total fabrication and were made solely as a pretext to obtain the alleged trade secrets of [Dr. Lin] and her company, EverNu Technologies.

[Dr. Lin's] counsel has specifically confirmed that [Dr. Lin] will not comply with the Court's discovery orders:

BY MR. HUTCHINSON:

... [W]e can appear [for the deposition]; but Dr. Lin will not testify about EverNu information.

*See*, N.T., 3/28/05, p. 142.

Over the past five years [Dr. Lin] has failed to comply with any order of this Court compelling discovery and has not paid the fines or counsel fees imposed by this Court. All previous sanctions imposed did not obtain [Dr. Lin's] compliance. Accordingly, when presented with [Rohm and Haas'] Motion for Default Judgment as a discovery sanction

pursuant to Pa.R.C.P., Rule 4019(c)(3), this Court granted the Motion.

Trial Court Opinion (1556 EDA 2008), 7/17/08, at 7–9.[2]

¶ 4 In addition to entering a default judgment against Dr. Lin, the trial court awarded Rohm and Haas the following injunctive relief:

1. The Defendant Dr. Lin is permanently enjoined from using, disclosing or divulging directly or indirectly any information that Plaintiff Rohm and Haas Company considers confidential or a trade secret.

2. The Defendant Dr. Lin and any other entity or individual associated with Dr. Lin or acting on her behalf are permanently enjoined from proceeding with methacrylic acid research and making other disclosures and uses of Rohm and Haas [sic] trade secrets.

3. The Defendant Dr. Lin shall cease and desist from consulting, performing any research or engaging in other activities pursuant to the outstanding EverNu Technologies LLC's contracts with the Department of Energy or any other research contracts concerning or involving methacrylic acid.

4. Defendant, Dr. Lin, for the next three (3) years shall not make, contribute [to] or participate in any (a) presentation or proposal; (b) publication; (c) application or proposal for research grant whether said presentation or submission for publication or application for a research grant is made on her own behalf, or any other entity she owns or is asso-

ciated with or on which she will be working as a principal scientist, collaborator, employee or otherwise, without submitting the same to Rohm and Haas ninety (90) days in advance for a trade secret review and obtaining agreement of the Plaintiff Rohm and Haas, that the presentation, publication or research grant application or proposal contains no Rohm and Haas trade secrets.

Default Judgment Order, 5/5/08.

 ¶ 5 Dr. Lin and EverNu appealed. We begin with Dr. Lin's appeal, in which she raises the following issues: [3]

A. Did the trial court abuse its discretion by entering a default judgment as a discovery sanction where the discovery was not determinative of the entire controversy?

B. Whether the trial court abused its discretion or erred as a matter of law when it sanctioned Dr. Lin for failing to produce documents and things belonging to a non-party or answer interrogatories addressed to the substantive property of a non-party?

C. Did the trial court abuse its discretion when it imposed a permanent injunction that was grossly overbroad as a discovery sanction?

D. Did the court abuse its discretion when it denied Dr. Lin's emergency motion for recusal?

Dr. Lin's Brief at 39, 52, 54, 58.

 ¶ 6 Dr. Lin's first issue challenges the trial court's entry of a default judgment as a discovery sanction. Under these circumstances appellate review is

---

**2.** We note that the trial court filed a companion opinion pursuant to Pennsylvania Rule of Appellate Procedure ("Pa.R.A.P.") 1925 in EverNu's appeal at 1601 EDA 2008. Docket Entry No. 850.

**3.** For ease of review, we have paraphrased the issues using language from the headings in the argument section of Dr. Lin's brief.

stringent. *Cove Centre, Inc. v. Westhafer Const., Inc.*, 965 A.2d 259, 261 (Pa.Super.2009) (citing *Croydon Plastics Co., Inc. v. Lower Bucks Cooling & Heating*, 698 A.2d 625, 629 (Pa.Super.1997); *Steinfurth v. LaManna*, 404 Pa.Super. 384, 590 A.2d 1286, 1288–1289 (1991) (recognizing "strict scrutiny" standard of review where discovery sanction imposed is tantamount to dismissal of underlying action)). Pa.R.C.P. 4019 authorizes the trial court to enter a default judgment against a defendant who fails to comply with the trial court's discovery orders. Pa.R.C.P. 4019(c)(3); *Judge Technical Services, Inc. v. Clancy*, 813 A.2d 879, 889 (Pa.Super.2002). "[A] default judgment entered pursuant to Pa. R.C.P. 4019(c)(3) is comparable to a judgment entered after hearing." *Judge Technical Services*, 813 A.2d at 890 (quoting *Miller Oral Surgery, Inc. v. Dinello I*, 342 Pa.Super. 577, 493 A.2d 741, 743 (1985)).

¶ 7 Generally, imposition of sanctions for a party's failure to comply with discovery is subject to the discretion of the trial court, as is the severity of the sanctions imposed. *Cove Centre, Inc.*, 965 A.2d at 261 (citing *Reilly v. Ernst & Young, LLP*, 929 A.2d 1193, 1199 (Pa.Super.2007); *Croydon Plastics Co.*, 698 A.2d at 629). Nevertheless, the court's discretion is not unfettered: because "dismissal is the most severe sanction, it should be imposed only in extreme circumstances, and a trial court is required to balance the equities carefully and dismiss only where **the violation of the discovery rules is willful** and the opposing party has been prejudiced." *Cove Centre, Inc.*, 965 A.2d at 261–262 (emphasis supplied) (quoting *Stewart v. Rossi*, 452 Pa.Super. 120, 681 A.2d 214, 217 (1996)). Consequently, where a discovery sanction either terminates the action directly or would result in its termination by operation of law, the court must consider multiple factors balanced against the necessity of the sanction. *Id.* (citations omitted).

¶ 8 In determining whether dismissal is appropriate, this Court has instructed that the following factors are to be considered:

(1) the nature and severity of the discovery violation;

(2) the defaulting party's willfulness or bad faith;

(3) prejudice to the opposing party;

(4) the ability to cure the prejudice; and

(5) the importance of the precluded evidence in light of the failure to comply.

*Croydon Plastics Co.*, 698 A.2d at 629; *Steinfurth*, 590 A.2d at 1288; *Pride Contracting, Inc. v. Biehn Construction, Inc.*, 381 Pa.Super. 155, 553 A.2d 82 (1989), *appeal denied*, 523 Pa. 643, 565 A.2d 1167 (1989). We are mindful that each factor represents a necessary consideration, not a necessary prerequisite. *Croydon Plastics Co.*, 698 A.2d at 629.

¶ 9 Dr. Lin argues that the requested discovery was not related to the issues in the complaint or determinative of the entire controversy; therefore, Dr. Lin contends, she was not in default on discovery related to the merits of the claim. Dr. Lin's Brief at 35, 39. According to Dr. Lin, because the cause of action set forth in Rohm and Haas' complaint is based on averments of specific conduct by Dr. Lin prior to June 2000, "the scope of authorized discovery remains defined by the material facts supporting the cause of action set forth in the original pleading." Dr. Lin's Brief at 39. In other words, Dr. Lin suggests that she was required to provide discovery related only to facts that existed prior to June 2000 and that she complied with such discovery requests. We disagree with Dr. Lin's premise that she was responsible only for discovery related to events before June of 2000.

¶ 10 The trial court is responsible for overseeing "discovery between the parties and therefore it is within that court's discretion to determine the appropriate measures necessary to insure adequate and prompt discovery of matters allowed by the Rules of Civil Procedure." *Berkeyheiser v. A–Plus Investigations, Inc.,* 936 A.2d 1117, 1125 (Pa.Super.2007). Discovery rulings are "uniquely within the discretion of the trial judge," and will not be reversed unless they are deemed to represent an abuse of discretion. *George v. Schirra,* 814 A.2d 202, 204 (Pa.Super.2002) (citations omitted).

¶ 11 Generally, discovery is liberally allowed with respect to any matter, not privileged, which is relevant to the cause being tried. Pa.R.C.P. 4003.1. Discovery in trade secret litigation is permissible so long as the information sought to be obtained is reasonably related to the underlying cause of action and the need for this information outweighs any harm that may occur as a result of its release. *Crum v. Bridgestone/Firestone North American Tire, LLC,* 907 A.2d 578 (Pa.Super.2006). Whether the disclosure of trade secrets will be allowed is to be determined according to the discretion of the trial court. *George,* 814 A.2d at 204.[4]

¶ 12 Moreover, as the trial court observed:

> A party's belief that discovery orders are wrong does not justify or excuse its violation of those orders. Rather, such defiance is a direct affront to the authority of the trial court

and to the integrity of the judicial system and rule of law.

*See,* 6 Standard Pa. Practice, 2d, 34:85, p. 441, citing *Luszczynski v. Bradley,* 729 A.2d 83 (Pa.Super.1999).

> A litigant cannot be permitted to determine what constitutes discoverable information. The Pennsylvania Superior Court in addressing a similar discovery issue in *George, supra,* expressed its reluctance "to allow a participant in a lawsuit to dictate the determination of what is, and what is not, relevant. To allow this practice is akin to allowing a participant in a contest to referee the contest. In the contest of litigation, the judge and the judge alone, acts as the referee." *George,* 814 A.2d at 205.

Trial Court Opinion (1556 EDA 2008), 7/17/08, at 11–12.

¶ 13 Here, the trial court determined that the requested discovery was important because it was directly related to Rohm and Haas' claims for misappropriation of trade secrets, breach of contract, and breach of fiduciary duty. Trial Court Opinion (1556 EDA 2008), 7/17/08, at 11. We discern no abuse of discretion or error of law in the trial court's conclusion. The record reveals, and this Court previously acknowledged, that Dr. Lin agreed in writing on several occasions that she would not reveal Rohm and Haas' confidential information and trade secrets during her employment and beyond her employment with Rohm and Haas. *See Rohm and Haas,* 1246 EDA 2001 at 2–5 (citing Confidentiality and Employment Agreement, 1/3/89; EEOC Settlement Agreement, 11/10/99; Separation Agreement and Re-

---

4. "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treat-

ing or preserving materials, a pattern for a machine or other device, or a list of customers." *Tyson Metal Products, Inc. v. McCann,* 376 Pa.Super. 461, 546 A.2d 119 (1988) (quoting Restatement of Torts § 757, Comment b (1939)).

lease, 11/15/99, at Exhibit A (Worldwide Confidentiality and Employment Agreement); and Separation Agreement and Release, 11/15/99, at Exhibit B (Departing Employee Notice and Acknowledgement of Continuing Obligations and Acknowledgment and Records Security Statement)). The parties' agreements did not limit protection only to trade secrets and confidential information related to the area Dr. Lin worked in at Rohm and Haas, but to "any non-public information which could be used for a competitive advantage that [Dr. Lin] acquired during [her] tenure at Rohm and Haas." Separation and Release, 11/15/99, at Exhibit B (Departing Employee Notice and Acknowledgement of Continuing Obligations). Thus, Dr. Lin's contractual obligation encompassed all of Rohm and Haas' confidential information and continued beyond the termination of her employment in 1999.

¶ 14 Dr. Lin's repeated breach of that obligation gave rise to the underlying equity action for damages based on past breaches and to the preliminary injunction as protection against future breaches. Complaint, 6/12/00; Preliminary Injunction, 4/17/01. Rohm and Haas' claim against Dr. Lin for past conduct and its need to protect against future conduct gave rise to the requested discovery. Trial Court Opinion (1556 EDA 2008), 7/17/08, at 7. Specifically, Rohm and Haas sought discovery with regard to Dr. Lin's scientific business activities, publications, presentations, and communications, and, in particular, with regard to what information Dr. Lin used to obtain government research grants on behalf of her company, EverNu. Thus, the requested discovery was related to Rohm and Haas' underlying equity action and to enforcement of the preliminary injunction.

¶ 15 Additionally, all the factors for a discovery sanction are supported by the record at hand. First, Dr. Lin was the driving force behind violation of the discovery orders. In violation of her contractual obligation, she misappropriated sensitive Rohm and Haas information essential to its business and used this information in furtherance of her own business to the detriment of Rohm and Haas. *Rohm and Haas*, 1246 EDA 2001 at 5 (citing N.T., 2/[6]/01, at 10–67). Second, Dr. Lin's actions demonstrated a willful defiance of the court's discovery orders and disregard for the myriad less severe sanctions. Although she entered into a confidentiality agreement on June 21, 2000, which provided her with protection for any sensitive information disclosed during the course of the litigation, and despite being given numerous opportunities, Dr. Lin failed to comply with the court's orders for five years and expressed no intention of ever complying. Trial Court Opinion (1556 EDA 2008), 7/17/08, at 9, 10 (citing N.T., 3/28/05, at 142). Third, Dr. Lin's intransigence prejudiced Rohm and Haas by preventing it from pursuing its underlying claims for past appropriations and from enforcing the preliminary injunction against future appropriations. Fourth, Rohm and Haas could not cure the prejudice as Dr. Lin refused to provide information that would have disclosed the extent of her encroachments. Finally, the precluded evidence was important to the protection of Rohm and Haas' confidential information and trade secrets.

¶ 16 In sum, we conclude the trial court did not abuse its discretion or commit an error of law in entering a default judgment in favor of Rohm and Haas as a sanction for Dr. Lin's willful violation of the trial court's numerous discovery orders. Thus, Dr. Lin's first claim fails.

¶ 17 Next, Dr. Lin argues that the trial court erred in requiring her to produce documents and things belonging to a

non-party or answer interrogatories regarding the substantive property of a nonparty. The nonparty is Dr. Lin's alleged employer, EverNu. Dr. Lin's Brief at 52–54.

 ¶ 18 Relevant materials in the hands of non-parties to a suit are generally discoverable. *Leonard v. Latrobe Area Hosp.*, 379 Pa.Super. 243, 549 A.2d 997, 998 (1988). The Rules of Civil Procedure delineate the proper discovery procedure to be used when discoverable documents are in the hands of a non-party. *Id.* at 998. Rather than request that a party retrieve records in the hands of the nonparty, the non-party must be compelled to produce the records. The methods prescribed for obtaining records from a nonparty are a subpoena *duces tecum* or an independent action in equity against the nonparty. *Id.;* Pa.R.C.P. 4007.1(d)(2) and 4009.21 through 4009.27.

¶ 19 Here, the record indicates that Rohm and Haas eventually followed these procedures in requesting discovery from the non-party EverNu. Notice of Deposition and Subpoena *Duces Tecum*, 8/22/03. Also, the trial court considered Dr. Lin and EverNu to be "one in the same for purposes of this matter." Trial Court Opinion, 2/5/04, at 7. It summarized their relationship as follows:

> [EverNu] is the company [Dr. Lin] founded in May–June 2000, shortly after leaving the employ of Rohm and Haas. Dr. Lin is the CEO and CTO of EverNu and the company's address is identified as [Dr. Lin's] home address.

Trial Court Opinion (1556 EDA 2008), 7/17/08, at 7 n. 7 (citations omitted). Furthermore, although Dr. Lin claimed protection under the corporate veil of EverNu, she filed discovery responses informing Rohm and Haas that, as of June 2000, EverNu had ceased all business operations. Motion to Compel Responses to Interrogatories, 6/27/03, at ¶ 7 and Exhibit B. Then, despite her obligation to do so, Dr. Lin did not update or amend her discovery responses to inform Rohm and Haas that, as of March 2003, EverNu had received a government grant from the U.S. Department of Energy for a project titled "Metal Oxide Catalyst for Methacrylic Acid Preparation via One–Step Oxidation of Isobutaine." *Id.* at ¶ 13 and Exhibit E. Eventually, Dr. Lin admitted she was the incorporator, president, principal, and sole shareholder of EverNu, which was "in the business of providing technical consulting and contracted service in chemistry and related fields." Amended Response to Plaintiff's Second Set of Interrogatories, 11/12/04, at ¶ 5; N.T., 12/12/03, at 4. As such, the trial court was not persuaded by Dr. Lin's objection that "the information sought constituted her company's proprietary information." Trial Court Opinion (1556 EDA 2008), 7/17/08, at 11.

¶ 20 Upon review, we conclude that the record supports the trial court's determination. We also find adequate support for the trial court's corresponding determination that the information requested was "reasonably related to the underlying litigation." Trial Court Opinion (1556 EDA 2008), 7/17/08, at 11 (citing *Crum*, 907 A.2d 578). Thus, based on this record and our standard of review, we discern no abuse of discretion or error of law in requiring Dr. Lin to respond to discovery requests directed to EverNu.

 ¶ 21 In her third issue, Dr. Lin complains the trial court imposed a permanent injunction that was grossly overbroad as a sanction for discovery violations. According to Dr. Lin, the trial court did not balance her right to the unhampered pursuit of the occupation for which she is best suited against the nominal likelihood of damage to Rohm and Haas' intellectual

property as of the time the injunction was entered. Dr. Lin's Brief at 54–57.

¶ 22 "Ultimately, the grant or denial of a permanent injunction will turn on whether the lower court properly found that the party seeking the injunction established a clear right to relief as a matter of law. This inquiry involves a legal determination by the lower court." *Buffalo Twp. v. Jones*, 571 Pa. 637, 644 n. 4, 813 A.2d 659, 664 n. 4 (2002), *cert. denied*, 540 U.S. 821, 124 S.Ct. 134, 157 L.Ed.2d 41 (2003) (citations omitted). Accordingly, appellate review in these cases determines whether the lower court committed an error of law in granting or denying the permanent injunction. *Id.* Our standard of review for a question of law is *de novo,* and our scope of review is plenary. *Id.* (citations omitted).

■ ¶ 23 However, we also recognize, as previously discussed, that the decision to sanction a party and the severity of the sanction are matters vested in the discretion of the trial court. *Judge Technical Services*, 813 A.2d at 890 (citations omitted). In exercising its discretion,

> the [trial] court is required to strike a balance between the procedural need to move the case to a prompt disposition and the substantive rights of the parties. The court must examine the party's failure to comply in light of the prejudice caused to the opposing party. Whether the failure to provide information represents a willful disregard of a court order is also a factor to be considered in fashioning the severity of the sanction.

*Id.* (quoting *Miller Oral Surgery, Inc. v. Dinello II*, 416 Pa.Super. 310, 611 A.2d 232, 234 (1992), *appeal denied*, 533 Pa. 651, 624 A.2d 111 (1993)).

■ ¶ 24 With regard to using injunctive relief to protect trade secrets, we have explained as follows:

> An injunction may be issued by a court of equity to protect an employer from the unlicensed use of its trade secrets by an ex-employee provided the employee entered into a restrictive covenant, or was bound to secrecy by virtue of a confidential relationship existing between the employer and the employee. These secrets must be particular secrets of the employer, not general secrets of the trade in which the employer is engaged. However, an employee's aptitude, skill, dexterity, manual and mental ability and such other subjective knowledge obtained during the course of employment are not the property of the employer, and cannot be a legally protected trade secret.

*Oberg Industries, Inc. v. Finney*, 382 Pa.Super. 525, 555 A.2d 1324 (1989) (internal citations and quotation marks omitted). Moreover, a court will enforce restrictions imposed by covenant that are reasonably necessary for the protection of the employer, so long as the restrictions are reasonably limited in duration and geographic extent. *All–Pak, Inc. v. Johnston*, 694 A.2d 347, 350–351 (Pa.Super.1997). The right of an employer to be protected against unfair competition stemming from misappropriation of its trade secrets must be balanced against the right of an individual to the unhampered pursuit of the occupation and livelihood for which she is best suited. *Renee Beauty Salons, Inc. v. Blose–Venable*, 438 Pa.Super. 601, 652 A.2d 1345, 1347 (1995).

¶ 25 Here, the permanent injunction reads as follows:

> 1. The Defendant Dr. Lin is permanently enjoined from using, disclosing or divulging directly or indirectly any information that Plaintiff Rohm and Haas Company considers confidential or a trade secret.

2. The Defendant Dr. Lin and any other entity or individual associated with Dr. Lin or acting on her behalf are permanently enjoined from proceeding with methacrylic acid research and making other disclosures and uses of Rohm and Haas [sic] trade secrets.

3. The Defendant Dr. Lin shall cease and desist from consulting, performing any research or engaging in other activities pursuant to the outstanding EverNu Technologies LLC's contracts with the Department of Energy or any other research contracts concerning or involving methacrylic acid.

4. Defendant, Dr. Lin, for the next three (3) years shall not make, contribute [to] or participate in any (a) presentation or proposal; (b) publication; (c) application or proposal for research grant whether said presentation or submission for publication or application for a research grant is made on her own behalf, or any other entity she owns or is associated with or on which she will be working as a principal scientist, collaborator, employee or otherwise, without submitting the same to Rohm and Haas ninety (90) days in advance for a trade secret review and obtaining agreement of the Plaintiff Rohm and Haas, that the presentation, publication or research grant application or proposal contains no Rohm and Haas trade secrets.

Default Judgment Order, 5/5/08.

¶ 26 Effectively, entry of the default judgment as a discovery sanction against Dr. Lin in this case made the preliminary injunction permanent. Although our research has not produced any Pennsylvania cases directly on point, we cannot say that the trial court erred in entering a permanent injunction as a discovery sanction. Dr. Lin's discovery abuses were willful, numerous, continuing, and in complete disregard of the trial court's orders. The trial court explicitly ordered Dr. Lin to comply with discovery, repeatedly gave her opportunities to comply with her discovery obligations in general and with its specific orders, and imposed several lesser sanctions—to no avail. *Accord Thacker v. State of Texas*, 852 S.W.2d 77 (Tex.App. 1993) (holding that entry of permanent injunction as discovery sanction was not excessive in light of Thacker's flagrant disregard of discovery obligations and trial court orders).

¶ 27 However, our review of the issue does not end there. The trial court in this case did more than make the preliminary injunction permanent. It expanded upon the restrictions contained in the preliminary injunction without a full hearing on the merits of Rohm and Haas' claims. We thus consider Dr. Lin's argument that the scope of the permanent injunction is impermissibly broad under the facts of this case. In doing so, we keep in mind that the purpose of discovery sanctions is to secure compliance with our discovery rules and court orders in order to move the case forward and protect the substantive rights of the parties, while holding those who violate such rules and orders accountable. However, we also consider whether the restrictions contained in this injunction, imposed as a discovery sanction, were just and were "directed against the [discovery] abuse and toward remedying prejudice to the other party." *Thacker*, 852 S.W.2d at 80.

¶ 28 Upon review of the record, we conclude that paragraph 1 of the permanent injunction resembles paragraph 1 of the preliminary injunction, which the parties did not challenge, and that it also comports

with the parties' existing non-compete and confidentiality agreements. *See* Confidentiality and Employment Agreement, 1/3/89; EEOC Settlement Agreement, 11/10/99; Separation Agreement and Release, 11/15/99, at Exhibit A (Worldwide Confidentiality and Employment Agreement); and Separation Agreement and Release, 11/15/99, at Exhibit B (Departing Employee Notice and Acknowledgement of Continuing Obligations and Acknowledgment and Records Security Statement). Those agreements specifically define Rohm and Haas' confidential information, and they protect Rohm and Haas against misappropriation by Dr. Lin. Neither Rohm and Haas nor Dr. Lin challenged the content or scope of these agreements. However, having entered the permanent injunction as a discovery sanction, and as previously discussed, the trial court did not conduct an evidentiary hearing on the merits of Rohm and Haas' request for injunctive relief. Accordingly, we caution Rohm and Haas that the permanent injunction does not afford it unfettered latitude or discretion in claiming that Dr. Lin violated the parties' agreements and the injunction. Rather, Rohm and Haas, as the moving party in any future action, would still have the burden of proving that Dr. Lin is misappropriating confidential information or trade secrets, as those terms are defined in the parties' agreements.

¶ 29 Likewise, paragraph 4 of the injunction resembles paragraph 2 of the preliminary injunction, which the parties did not challenge. Although the subject matter of paragraph 4 is broader in scope than paragraph 2 of the preliminary injunction, the temporal restrictions contained therein are limited to three (3) years. Thus, under the specific facts of this case, we conclude that paragraph 4 of the injunction is not impermissibly broad. Paragraph 4 is directed toward remedying the prejudice to Rohm and Haas by allowing for trade secret review for three years, while holding Dr. Lin accountable for her willful and repeated discovery violations. Once again, though, we caution Rohm and Haas that it does not have unfettered discretion in claiming that Dr. Lin is in violation of the parties' agreements and the injunction.

¶ 30 Turning to paragraphs 2 and 3 of the permanent injunction, however, we conclude they are overly broad and not supported by the record for several reasons. First, paragraph 2 enjoins "any other entity or individual associated with Dr. Lin or acting on her behalf." *Id.* at ¶ 2. Such relief is unreasonable in that it restrains unidentified third parties and contains no limits on time or scope. Second, the prohibition in paragraph 2 against "making other disclosures and uses of Rohm and Haas [sic] trade secrets" is already covered by the parties' contractual obligations and paragraph 1. Third, Dr. Lin's non-compete agreement imposed a one-year restriction on acrylic acid research, which was the subject of her work during the course of her employment with Rohm and Haas. Yet, paragraphs 2 and 3 extend such restriction indefinitely to a different subject, *i.e.,* methacrylic acid research, without sufficient indication in the record at hand that methacrylic acid research implicates Rohm and Haas' confidential information or trade secrets almost ten years after the termination of Dr. Lin's employment.

¶ 31 In light of the above, we affirm that part of the trial court's order that affords Rohm and Haas protection for its confidential information and trade secrets under paragraph 1 of the permanent injunction. Similarly, we affirm that part of the trial court's order that provides for trade secret review by Rohm and Haas under paragraph 4 of the permanent injunction. However, we are compelled to vacate that part of the trial court's order as to para-

graphs 2 and 3 of the permanent injunction. In doing so, we remand to the trial court to enable Rohm and Haas to produce evidence in support of the relief granted by the trial court in paragraphs 2 and 3 of the permanent injunction.

■ ¶ 32 Lastly, Dr. Lin argues that the trial court abused its discretion when it denied her emergency motion for recusal. In response, Rohm and Haas claims that this issue is waived for two reasons. First, Dr. Lin failed to include the order denying recusal in her notice of appeal. Rohm and Haas Brief at 57 (citing Pa.R.A.P. 904). Second, Dr. Lin failed to raise the order in any of her interlocutory appeals. Rohm and Haas Brief at 57 (citing *Strickland v. University of Scranton*, 700 A.2d 979 (Pa.Super.1997)).

■ ¶ 33 Pa.R.A.P. 904 provides that a notice of appeal must include the order from which the appeal is taken. However, "[a] notice of appeal filed from the entry of the final order in an action draws into question the propriety of any prior non-final orders." *Quinn v. Bupp*, 955 A.2d 1014, 1020 (Pa.Super.2008). Once an appeal is filed from a final order, all prior interlocutory orders become reviewable. *Id.* at 1020 (internal quotations and citations omitted). A motion for recusal is an interlocutory order. *Kenis v. Perini Corp.*, 452 Pa.Super. 634, 682 A.2d 845, 848 (1996). Therefore, the March 21, 2005 order denying recusal became reviewable upon the filing of the notice of appeal. Thus, this issue is properly before us.

■ ¶ 34 We review the denial of a motion to recuse for an abuse of discretion. *In re S.H.*, 879 A.2d 802, 808 (Pa.Super.2005), *appeal denied*, 586 Pa. 751, 892 A.2d 824 (2005). "It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Vargo v. Schwartz*, 940 A.2d 459, 471 (Pa.Super.2007) (quoting *Interest of S.H.*, 879 A.2d at 808).

> As with all questions of recusal, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion.

*Overland Enterprise, Inc. v. Gladstone Partners, LP*, 950 A.2d 1015, 1021 (Pa.Super.2008) (internal citations omitted).

¶ 35 Dr. Lin asserts that the trial court:

> demonstrated clear evidence of bias in the manner that [it] handled the pretrial and discovery issues in this case. The entry of the draconian discovery sanction of a default judgment imposing outrageous and overly restrictive terms on Dr. Lin that effectively preclude her from engaging in her chosen profession almost nine years after the termination of her employment is simply one more element of evidence demonstrating that [the trial court] has abandoned all pretense of objectivity.

Dr. Lin's Brief at 58. Notably, the trial court has not written on this issue. When first presented with Dr. Lin's emergency motion for recusal, the trial court denied it without an opinion. Moreover, the trial court did not request a statement of errors pursuant to Pa.R.A.P. 1925(b) and, there-

fore, did not address recusal in its Pa. R.A.P. 1925(a) opinion.

¶ 36 Nevertheless, we have reviewed the parties' arguments and the volumes of transcripts with a focus on the trial court's conduct, and we discern no abuse of discretion in denying the motion to recuse. References on pages 61 and 62 of Dr. Lin's brief to particular comments made by the trial court have, as Rohm and Haas suggests, been taken out of context. Our review indicates that the trial court was trying to understand Dr. Lin's and EverNu's claims that Rohm and Haas was on a fishing expedition for EverNu's technology and trade secrets, and not to protect its own. N.T., 12/12/03, at 17; N.T., 4/26/04, at 16; N.T., 11/15/04, at 30–33. Having been involved with this complex case for almost ten years, the trial court undoubtedly would have had questions regarding the various arguments and claims and would have developed an opinion about the parties and their motivations. The record at hand, however, does not present any evidence of trial court bias, prejudice, or impropriety. Rather, Dr. Lin's emergency motion for recusal appears to be a defensive reaction to the trial court's imposition of the default judgment and the injunction. It is not, however, a basis for relief.

¶ 37 We turn now to EverNu's appeal. As an initial matter, however, we must address EverNu's right of appeal in this case. "Except where the right of appeal is enlarged by statute, *any party* who is aggrieved by an appealable order

... may appeal therefrom." Pa.R.A.P. 501 (emphasis added). An appeal by a person who is not a party to the action in the trial court must be quashed. *Newberg v. Board of Public Educ.*, 330 Pa.Super. 65, 478 A.2d 1352, 1354 (1984) (citation omitted). Although our rules of appellate procedure do not define the term "party," the note following the definitional rule, Pa.R.A.P. 102, states that the definitional rule is based on 42 Pa.C.S.A. § 102. That section defines "party" as "a person who commences or against whom relief is sought in a matter." 42 Pa.C.S.A. § 102. A non-party shall be permitted to intervene at any time during the pendency of an action if "such person could have joined as an original party in the action or could have been joined therein; ... or the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action." Pennsylvania Rule of Civil Procedure ("Pa.R.C.P.") 2327(3) and (4).

¶ 38 In this case, EverNu did not commence this action nor was relief sought against it. Moreover, EverNu did not attempt to become a party by intervening pursuant to Pa.R.C.P. 2327. By its own admission, EverNu is a non-party. Docket No. 810 (Notice of Appeal, 5/22/08). Therefore, EverNu has *no* standing to appeal the trial court's final order. *Newberg*, 478 A.2d at 1354. Accordingly, we quash EverNu's appeal at 1601 EDA 2008.[5]

---

5. We note, however, that the trial court considered Dr. Lin and EverNu to be "one in the same for purposes of this matter." Trial Court Opinion, 2/5/04, at 7. Moreover, Rohm and Haas does not contest the appealability of the trial court's orders as they relate to EverNu. (In fact, Rohm and Haas spent a great deal of paper and ink in response to EverNu's appeal.) Therefore, to the extent EverNu raises any appealable issues related to discov-

ery, entry of the default judgment against Dr. Lin, entry of the permanent injunction, and recusal, we believe those issues are accurately and adequately addressed within the context of our determination of Dr. Lin's appeal. With regard to the entry of sanctions, EverNu concedes that issue was "purged and became a nullity" by entry of the default judgment which did not include monetary damages. EverNu's Brief at 26.

¶ 39 As a final matter, Rohm and Haas requests that this Court award it a set amount of damages, including attorney fees, as a sanction against Dr. Lin and her counsel, as well as EverNu and its counsel. Rohm and Haas' Brief at 59–69. Our Court may award attorney fees and damages for delay if we determine that an appeal is:

> frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

Pa.R.A.P. 2744. An appeal is "frivolous" if the appellate court determines that the appeal lacks any basis in law or in fact. *Gargano v. Terminix Intern. Co., L.P.,* 784 A.2d 188, 195 (Pa.Super.2001) (citing *Thunberg v. Strause,* 545 Pa. 607, 620, 682 A.2d 295, 302 (1996)). Simply because an appeal lacks merit does not make it frivolous. *Geiger v. Rouse,* 715 A.2d 454, 458 (Pa.Super.1998).

¶ 40 Rohm and Haas submits four grounds for the assessment of damages. First, Rohm and Haas claims that Dr. Lin filed a 122–page emergency application and 25–page memorandum of law with this Court solely to harass Rohm and Haas during the 30–day period in which it was required to respond to Dr. Lin's 68–page appellate brief and EverNu's 70–page appellate brief.[6] Moreover, Rohm and Haas alleges that Dr. Lin filed the application knowing she had already violated the order from which she sought the stay. Rohm and Haas' Brief at 60–61.

¶ 41 Second, Rohm and Haas complains that Dr. Lin's main brief consists of irrelevant arguments and cases, as well as blistering attacks on Judge Moore, and that Dr. Lin does not come to this Court with clean hands, as she has violated six orders of this Court and has not paid the $117,394.84 she owes under the trial court's sanction orders. Rohm and Haas' Brief at 63. Third, Rohm and Haas contends that Dr. Lin's brief "is based solely on facts contrary to the Lower Court findings." *Id.* at 64. Lastly, Rohm and Haas argues that "the 'legal arguments' [Dr.] Lin makes here are without any legal basis." *Id.* at 66. Specifically, Rohm and Haas claims, Dr. Lin "carries the information in her head, stores the documents in her home and is the sole owner and CEO of a limited liability corporation;" therefore, the argument that she cannot reveal the requested discovery because it belongs to EverNu is a fiction, "not the basis of a legitimate legal argument." *Id.* Also, Rohm and Haas notes, the trial court did not believe Dr. Lin's claims that Rohm and Haas was on a fishing expedition for EverNu's trade secrets; therefore, Dr. Lin's attempt to challenge the trial court's credibility determinations is specious. *Id.* at 67.

¶ 42 As this appeal is from the imposition of severe sanctions in the form of a default judgment and permanent injunction, we reject any suggestion that it was frivolous or filed solely for delay. Given our disposition, we cannot conclude that it lacks any basis in fact or law and that it amounts to an unreasonable exercise. *Geiger,* 715 A.2d at 459. Dr. Lin and EverNu refer to both facts and case law in support of their arguments that the default judgment and permanent injunction were improper. Furthermore, Rohm and Haas has not provided any monetary figures or documentation that would support a set amount of damages. Thus, although Dr. Lin's tactics cause concern, we decline to exercise our discretion under Rule 2744

---

6. We denied the application on September 26, 2008.

and award Rohm and Haas a set amount of damages on the record at hand.

¶ 43 Order affirmed in part, vacated in part, and remanded for further proceedings consistent with this Opinion. Appeal at 1601 EDA 2008 quashed. Motion for attorney fees denied. Jurisdiction relinquished.