**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JAMIE FLICK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MELINDA FLICK | : | No. 75 MDA 2025 |

Appeal from the Order Entered December 23, 2024
In the Court of Common Pleas of Lycoming County Civil Division at
No(s): FC-2017-20555-DC

BEFORE: LAZARUS, P.J., BOWES, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: AUGUST 5, 2025**

Appellant Jamie Flick ("Husband") appeals from the December 23, 2024, order entered in the Court of Common Pleas of Lycoming County. After a careful review, we affirm.

The litigation in this matter arose from a divorce complaint with contested economic issues, as well as subsequent petitions for the enforcement of the parties' property settlement agreement, which was incorporated but not merged into the divorce decree. The pertinent background is as follows.

Husband and Melinda Flick ("Wife") were married in April of 1998, and they separated in July of 2016. On May 4, 2017, Husband filed a complaint

_____

[*] Former Justice specially assigned to the Superior Court.

in divorce averring the parties' marriage is irretrievably broken. Husband sought equitable distribution, as well as counsel fees and costs.

On June 5, 2017, Wife filed an answer with a counterclaim to Husband's complaint in divorce. In her counterclaim, Wife sought equitable distribution, alimony *pendente lite*, alimony, and counsel fees. On October 18, 2018, the trial court appointed a master to address divorce, equitable distribution, alimony, counsel fees, and cost/expenses. On December 17, 2018, Wife filed a motion to compel discovery, and on January 15, 2019, Husband filed an Inventory and Appraisement of all property.

On October 15, 2019, the master held a hearing at which the parties reached an agreement resolving the economic claims. On November 5, 2019, the master filed a "Memorandum of Understanding," which sets forth the parties' property settlement agreement.[1] The parties acknowledged that the Memorandum of Understanding resolved all pending economic issues between them.

By order entered on November 5, 2019, the trial court approved the parties' Memorandum of Understanding. The trial court specifically indicated that the property settlement agreement was approved and shall be incorporated but not merged into the divorce decree. Trial Court Order, filed 11/5/19, at 1.

---

[1] The "Memorandum of Understanding" is a transcribed excerpt from the master's hearing.

Thereafter, the parties filed several petitions for contempt, which the trial court resolved. The parties executed the necessary forms for consent to the divorce. On November 19, 2020, the trial court entered a divorce decree. The trial court indicated that the parties were divorced from the bonds of matrimony, and the court reiterated that the terms of the comprehensive property settlement agreement as set forth in the Memorandum of Understanding reached between the parties on October 15, 2019, and approved by the trial court on November 5, 2019, was incorporated into but not merged with the divorce decree.

Thereafter, Wife and Husband filed petitions for contempt of the Memorandum of Understanding. Relevantly, on March 5, 2021, the trial court held Husband in contempt and directed him to pay Wife's attorney's fees. On April 16, 2021, Wife filed a petition for contempt contending that Husband failed to pay Wife's attorney's fees as directed by the trial court's March 5, 2021, order.

On June 16, 2021, Husband filed a motion to recuse the trial court judge, the Honorable Eric R. Linhardt, from this matter. On June 30, 2021, Judge Linhardt granted Husband's request for his recusal, and the matter was assigned to the Honorable Ryan M. Tira. However, by order entered on August 26, 2021, Judge Tira recused from the matter because Wife was in a relationship with a person with whom the Judge had a personal connection. The matter was then assigned to the Honorable Jeffrey A. Smith, Senior Judge.

Thereafter, Wife filed an amended motion for contempt of the parties' Memorandum of Understanding, and Husband filed a motion for contempt. Also, on October 21, 2021, Husband filed a motion to recuse Judge Smith because Husband had "concerns" about Judge Smith's political connections. Judge Smith denied Husband's motion to recuse.

On March 8, 2022, the parties entered a stipulation, which Judge Smith approved by order filed on March 10, 2022. Specifically, the parties acknowledged the stipulation was intended to address the then outstanding contempt motions and petitions for enforcement of the Memorandum of Understanding.

On September 28, 2023, Wife filed another petition to enforce the Memorandum of Understanding. Specifically, Wife indicated that, pursuant to the Memorandum of Understanding, she is to retain a fifty percent interest in Husband's fifty percent interest of the oil, gas, and mineral rights associated with the property at 17** Lick Run Road, which is owned by Flanton Properties.[2] However, Wife contended Husband did not take the steps necessary to transfer the allotted interest in the subsurface rights to Wife.

_____

[2] Flanton Properties is a general partnership governed by a partnership agreement dated October 19, 2010, with Christopher Branton and Husband each owning a fifty percent interest in the partnership. The surface and subsurface estate of real property located at 17** Lick Run Road is the sole asset of Flanton Properties. Pursuant to Husband's and Wife's Memorandum of Understanding, Husband was to receive 100% of his 50% interest in the surface rights of the property; however, Wife was to receive 50% of Husband's 50% interest in the subsurface oil, gas, and mineral rights of the property.

Wife's September 28, 2023, petition for enforcement was assigned to the Honorable William P. Carlucci. On December 21, 2023, Husband filed a petition to disqualify Wife's attorney from further matters. On February 12, 2024, Husband filed his first motion for the recusal of Judge Carlucci. Specifically, Husband contended that Wife's attorney's former law firm was the same law firm where Judge Carlucci was a partner prior to his taking the bench. He also noted that the counsel involved in the "land deal" regarding 17** Lick Run Road was a partner of the Judge's and Wife's attorney's former law firm. Thus, Husband sought Judge Carlucci's recusal.

By order entered on February 20, 2024, Judge Carlucci denied Husband's petition to disqualify Wife's attorney. By order entered on February 21, 2024, and clarified on February 26, 2024, Judge Carlucci denied Husband's motion for his recusal.

By order and opinion entered on May 6, 2024, Judge Carlucci granted, in part, Wife's September 28, 2023, petition to enforce the Memorandum of Understanding, and directed, in part, that the parties would return to court for further proceedings in connection with the petition for enforcement. Specifically, Judge Carlucci directed Mr. Branton[3] to present a proposed

_____

[3] By order entered on December 5, 2023, Judge Carlucci directed that Christopher H. Branton of Flanton Properties be joined as a party since he had an interest in the property held by Flanton Properties. Since the Memorandum of Understanding was incorporated, but not merged, into the divorce decree, Wife's petition for enforcement was properly addressed by the civil court with
*(Footnote Continued Next Page)*

assignment document in a form reasonably sufficient to assign Wife a 25% interest in the subsurface rights of 17** Lick Run Road. Moreover, by order entered on June 7, 2024, Judge Carlucci directed the proposed assignment document shall include language indicating that no portion of the oil, gas, or mineral rights of the property could be leased or transferred without the written consent of Husband, Wife, and Mr. Branton. The trial court set a continued hearing date for June 4, 2024.

On June 3, 2024, Husband filed a second motion for the recusal of Judge Carlucci. Therein, Husband asserted, *inter alia*, that on May 4, 2024, Judge Carlucci made disparaging comments regarding *pro se* litigants in an opinion editorial, which was published in a local newspaper. Thus, since Husband was proceeding *pro se*,[4] Husband requested Judge Carlucci recuse himself. Husband also noted that he recently learned Wife's counsel represented Judge Carlucci during his divorce proceedings. Moreover, he reiterated that Wife's attorney's former law firm was the same law firm where Judge Carlucci was a

---

the law of contracts governing. ***See Krasinger v. Krasinger***, 928 A.2d 333 (Pa.Super. 2007) (holding marital settlement agreements are governed by the laws of contract unless they are merged into the divorce decree in which case they are governed by the provisions of the Divorce Code).

[4] Husband was initially represented by counsel in this matter. However, on November 4, 2019, counsel filed a petition to withdraw her representation based upon Husband's request that she do so, and the trial court granted the petition on November 14, 2019. Husband then proceeded *pro se* in the lower court, although he is represented by counsel on appeal.

partner prior to his taking the bench, and he noted that the counsel involved in the "land deal" regarding 17** Lick Run Road was a partner of the Judge's and Wife's attorney's former law firm. On June 14, 2024, Judge Carlucci denied the second motion for his recusal.

By order entered on August 5, 2024, the trial court held that, as it pertains to Wife's September 28, 2023, petition for enforcement, as well as the trial court's subsequent orders related thereto, the parties had reached an assignment document, which the court approved and would be filed by the parties. On August 5, 2024, Wife, Husband, and Mr. Branton filed the Assignment of Partnership Rights Agreement, thus satisfying Wife's petition to enforce the Memorandum of Understanding filed on September 28, 2023.[5]

On August 7, 2024, Mr. Branton filed a petition to enforce the Assignment of Partnership Rights Agreement. Specifically, Mr. Branton indicated Flanton Properties had received an offer of $300.00 per acre, inclusive of the oil, gas, and mineral rights, and Wife would not agree to sell. Thus, Mr. Branton sought a court order to permit the sale.

On August 22, 2024, Wife filed a petition to enforce the Memorandum of Understanding. Therein, she alleged that Husband, without Wife's consent,

_____

[5] The Assignment of Partnership Rights Agreement provided that Mr. Branton, Husband, and Wife agreed that no portion of the oil, gas, or mineral rights associated with the real property would be leased or transferred without the consent of all parties or order of court. The agreement also provided that, if any party refused a proposed agreement for sale or lease of the oil, gas, or mineral rights, the trial court would be permitted to resolve the dispute.

- 7 -

could not agree to the sale of the oil, gas, and mineral rights for the property held by Flanton Properties since, pursuant to the Memorandum of Understanding, Wife owns a 50% share of Husband's 50% interest in the oil, gas, and mineral rights for the property.

By order entered on August 28, 2024, the trial court indicated that, as it pertains to Mr. Branton's petition to enforce the Assignment of Partnership Rights Agreement and Wife's petition to enforce the Memorandum of Understanding, the parties agreed that Husband would pay Wife $28,875.00 in full satisfaction for any and all interest Wife has pursuant to the assignment agreement document and equitable distribution orders. The trial court directed the payment shall be made by September 6, 2024. The trial court held the petition to enforce the Assignment of Partnership Rights Agreement and the petition to enforce the Memorandum of Understanding were dismissed as moot.

On November 25, 2024, Husband filed a motion for special relief for enforcement of the Memorandum of Understanding. Therein, Husband averred that, pursuant to the Memorandum of Understanding, he has been paying his, as well as his three children's, Verizon accounts. However, he recently attempted to make changes to the plan, and he was informed the "Administrator" was Wife. Husband asked Wife to remove herself as the "Administrator;" however, Wife refused.

On December 16, 2024, Wife filed a petition to enforce the Memorandum of Understanding. She indicated that the parties agreed that each would retain all household property and furnishings in their possession; however, Husband would not give her certain personal property.

On December 17, 2024, Husband filed a third motion for the recusal of Judge Carlucci. Therein, Husband raised new claims seeking the Judge's recusal, as well as reiterated and asked the Judge to reconsider recusing based on the fact he was a law partner at the same firm where Wife's counsel had been a law partner, he was a law partner at the same firm where the attorney who drafted the initial "land deal" related to 17** Lick Run Road was a law partner, Wife's counsel represented Judge Carlucci in his divorce proceedings, and he made alleged disparaging comments regarding *pro se* litigants in a local newspaper. On December 18, 2024, Wife filed a petition for attorney's fees.

By order entered on December 18, 2024, Judge Carlucci granted Husband's request for enforcement of the Memorandum of Understanding. Judge Carlucci directed Wife to provide a letter to Husband permitting Verizon to list Husband as the "Administrator" of the Verizon Wireless Account. By order and opinion entered on December 23, 2024, Judge Carlucci denied Husband's third motion for his recusal. Wife subsequently withdrew her December 16, 2024, petition for enforcement of the Memorandum of Understanding, as well as her December 18, 2024, petition for attorney's fees.

On January 13, 2025, Husband filed a notice of appeal to this Court. In his notice of appeal, Husband averred he was challenging the three orders wherein Judge Carlucci denied Husband's motions for his recusal. All Pa.R.A.P. 1925 requirements have been met.

On appeal, Husband sets forth the following issues in his "Statement of Question Presented" (verbatim):

I.     Whether the Superior Court has jurisdiction over the appeal?

II.    Whether the trial court abused its discretion when denying a motion for recusal based off its failure to disclose its previous relationship with opposing counsel?

III.   Whether the trial court abuised (*sic*) its discretion and acted in a biased manner when denying a motion for recusal after the local newspaper published the judge's personal editorial regarding *pro se* litigants?

Husband's Brief at 4 (unnecessary capitalization omitted).

Initially, we address the procedural posture of this case. Here, Wife filed a petition to enforce the parties' marital property settlement agreement (the Memorandum of Understanding) on September 28, 2023, and Judge Carlucci was assigned to the matter. During the pendency of Wife's petition for enforcement, Husband filed a first motion for Judge Carlucci's recusal on February 12, 2024, which Judge Carlucci denied on February 21, 2024 (clarified by order on February 26, 2024). Husband filed a second motion for Judge Carlucci's recusal on June 3, 2024, which Judge Carlucci denied on June 14, 2024.

- 10 -

In these two motions for recusal, Husband raised the same substantive issues that he raises now on appeal; *to wit*, that Judge Carlucci should have recused since he was a law partner at the same firm where Wife's counsel had been a law partner, he was a law partner at the same firm where the attorney who drafted the initial "land deal" related to 17** Lick Run Road was a law partner, Wife's counsel represented Judge Carlucci in his divorce proceedings, and he made disparaging comments regarding *pro se* litigants in a local newspaper.

Thereafter, Wife's petition to enforce the Memorandum of Understanding, which she filed on September 28, 2023, was disposed of by final order entered on August 5, 2024. **See Whittaker v. Lu**, 323 A.3d 871, 875 (Pa.Super. 2024) (holding "an order granting enforcement of a settlement agreement constitutes a final, appealable order"). However, Husband did not file an appeal within thirty days from the August 5, 2024, order.[6] **See** Pa.R.A.P. 903 (requiring all "notices of appeal shall be filed within 30 days after the entry of the order from which the appeal is taken").

_____

[6] We note that, generally, an order denying a motion for recusal is a non-appealable interlocutory order. **See In re Bridgeport Fire Litigation**, 51 A.3d 224, 229 (Pa.Super. 2012); **Rohm & Haas Co. v. Lin**, 992 A.2d 132, 149 (Pa.Super. 2010) (noting a motion for recusal does not meet the collateral order doctrine). However, "[o]nce an appeal is filed from a final order, all prior interlocutory orders become reviewable." **In re Bridgeport Fire Litigation**, 51 A.3d at 229. Here, Husband could have filed an appeal from the August 5, 2024, order challenging the trial court's denial of his first and second motions for recusal.

Rather, thereafter, on November 25, 2024, Husband filed a motion for enforcement of the Memorandum of Understanding on a different issue than that presented in Wife's September 23, 2023, petition for enforcement. Husband then filed a third motion seeking Judge Carlucci's recusal on December 17, 2024, wherein he, *inter alia*, again sought recusal on the same basis as he presented in his prior motions for recusal (and he sets forth on appeal). After Judge Carlucci granted Husband's motion for enforcement on December 18, 2024, he denied Husband's third motion for his recusal on December 23, 2024.[7] Husband filed a notice of appeal on January 13, 2025, which is within the requisite thirty days. **See** Pa.R.A.P. 903. However, we decline to address the substantive merits of Husband's recusal issues.

Our Supreme Court has held:

In this Commonwealth, a party must seek recusal of a jurist at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis for a motion to recuse. If the party fails to present a motion to recuse at that time, then the party's recusal issue is time-barred and waived.

**Lomas v. Kravitz**, 642 Pa. 181, 170 A.3d 380, 390 (2017) (citations omitted).

Here, as indicated *supra*, the recusal issues raised in Husband's third recusal motion, which he filed on December 17, 2024, are the same as those raised in his previous recusal motions and for which he did not file a timely

---

[7] All other outstanding petitions were withdrawn, and no further matters are pending related to this matter in the trial court at this time.

appeal following the denial thereof.[8]  In essence, in the December 17, 2024, motion, Husband reiterated his recusal issues, which are time-barred and waived because he failed to file a timely appeal from the final order entered after the previous denial of the first and second motions to recuse wherein he raised the same issues.[9]  Accordingly, we conclude that, to the extent Husband's instant appeal was from a timely, appealable order,[10] he has waived the substantive issues regarding recusal on appeal.

　　　For all of the foregoing reasons, we affirm.

　　　Order affirmed.

_____

[8] In his third recusal motion, Husband included additional "new" reasons seeking Judge Carlucci's recusal; however, the additional "new" reasons have not been presented on appeal.

[9] To the extent the third motion for recusal could be construed as a motion for reconsideration, we note that it was not timely filed. *See* 42 Pa.C.S.A. § 5505 (allowing a court to modify or rescind an order within 30 days after its entry, if no appeal has been taken).

[10] As indicated *supra*, orders denying motions for recusal are generally non-appealable interlocutory orders.  However, here, Husband filed his third motion for recusal while he and Wife had petitions for enforcement of the Memorandum of Understanding pending.  Judge Carlucci ruled on Husband's petition for enforcement on December 18, 2024, and after Judge Carlucci denied Husband's third motion for recusal on December 23, 2024, Wife withdrew her pending petitions for enforcement.  Thus, the December 23, 2024, order disposed of all parties and claims in this particular case. *See* Pa.R.A.P. 341(b)(1).
　　　We note Wife contends that, to the extent the December 23, 2024, order is a final order, we should find Husband's recusal claims moot since there are no pending petitions.  However, given our discussion *supra*, we need not address whether the issues are moot.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/05/2025